[Crim. No. 2303. First Dist., Div. One. Dec. 18, 1944.]

THE PEOPLE, Respondent, v. WILLIAM SERPA,
Appellant.

Alfred J. Hennessy for Appellant.

Robert W. Kenny, Attorney General, David K. Lener and Harold B. Haas, Deputies Attorney General, for Respondent.

KNIGHT, J.—The appellant, William Serpa, was found guilty by a jury of the crime of second degree robbery, and he has appealed from the judgment of conviction and the order denying his motion for a new trial.

The robbery was committed in the Mission District, San Francisco, by two men. The identity of one of the men was not ascertained, and so far as the record shows he has never been apprehended. Appellant was taken into custody on the same day the crime was committed, and later charged with the commission thereof. As a defense to the charge he sought to prove an alibi, but it was rejected by the jury; and the first point urged by appellant in support of the appeal is that the evidence is insufficient to support the jury's finding on the question of his guilt. There is no merit in the point.

Appellant was a shipyard employee; and at the time of the robbery he was on parole from San Quentin Prison wherein he had served part of a sentence for second degree burglary. At the time of his arraignment he answered that his true name was William Serpa, but at the trial he testified that his true name was Herbert William Serpa. The victim of the robbery was Adolph M. Lapsic. Less than two months prior to the date on which he was robbed he had received an honorable discharge from the United States Marine Corps on account of a fractured spine sustained by him while filling an assignment as instructor of engineering at a training camp near San Diego; and it was mainly on his testimony that the conviction herein was obtained. While his testimony was conflicting on some points, it is beyond question legally sufficient to support the finding of the jury that appellant was one of the robbers.

Among the essential facts established thereby were the following: During the latter part of the month of December, 1943, Lapsic was living on Valencia Street, and a few days before Christmas, about 10:30 o'clock in the evening, he visited a so-called tavern located on Valencia Street between 16th and 17th Streets. Among those present were a number of sailors, and the appellant and a companion whose identity was not ascertained, but who was described as "a heavy set man." During the evening Lapsic made the acquaintance of appellant and his companion, and at closing time a party consisting of appellant, his companion, Lapsic, and two or three of Lapsic's friends, one of whom was a woman, left the tavern together and went to a nearby apartment house wherein liquors were sold. Upon arriving there, however, they found

that the place was filled. It was then past midnight, and rather than wait around to get into the place, Lapsic's friends went away, and he remained with appellant and his companion. After the others had gone appellant and his companion invited Lapsic to go to appellant's apartment to have some drinks, and Lapsic consented. Soon afterwards, appellant and his companion leading the way, all three entered a blind alley, whereupon the heavy set man seized Lapsic from behind, and as he did so either he or appellant said: "This is a stick-up." The heavy set man then proceeded to pinion Lapsic's arms behind him, and press something against Lapsic's back which Lapsic took to be a weapon of some kind. Thereupon the two men took from Lapsic his wallet, a seventeen-jewelled gold wrist watch, and his Marine Corps insignia ring. They then proceeded to undress Lapsic to look for a money belt, after which they extracted the money from the wallet and gave him back the empty wallet, his ring and fifty cents for carfare. Appellant then ordered Lapsic to walk toward the farther end of the alley, and threatened that if he turned around during the next fifteen minutes they would blow his brains out. Lapsic waited about five minutes and then notified the police. Meanwhile appellant and his companion disappeared. About eight o'clock that evening Lapsic again went to the tavern and looking through the doorway saw appellant standing at the bar. Lapsic immediately went across the street and phoned to the police. Two officers responded in a patrol car, and Lapsic pointed out appellant as one of the men who had robbed him. One of the officers said to Lapsic, "Are you positive?" and Lapsic replied, "Absolutely, that is the man." The officers then placed appellant under arrest and took him to the police station. There appellant denied having participated in the robbery; but according to the officer's testimony appellant went on to say that he was "behind the eight ball" because he was on parole from San Quentin, and that if he was arrested on the charge of robbery he knew "he was a cinch to go back"; and that if he could "do it" he would "pay the man off so much a week, to get out of this fuss." Later, at the trial, Lapsic again positively identified appellant as one of the men who had robbed him. In view of the foregoing facts it would seem that no argument is required to demonstrate that the evidence is legally sufficient to sustain the verdict.

The witnesses by whom appellant sought to prove an alibi were, besides himself, his sister and a girl then living

with his sister, and the substance of their testimony was that on the night of the robbery appellant was visiting his mother at her home in San Rafael; that he arrived there about eight o'clock in the evening and did not leave until about two o'clock the next afternoon. It is evident, however, that the jury was not convinced of the truth of the testimony thus offered by appellant to establish an alibi; and under well settled rules it is within the exclusive province of the jury to pass upon the credibility of the witnesses and to determine the weight that shall be given to this testimony. In other words, the alibi testimony offered by appellant and his witnesses at the most merely raised a conflict in the evidence. Moreover, in addition to Lapsic's positive testimony that appellant was one of the men who robbed him, the bartender of the tavern testified in rebuttal to the effect that he believed that he saw appellant on the night of the robbery sitting in a restaurant across the street from the tavern; that while he was not sure appellant was the man he saw, he was "pretty positive of it"—that he "looked like the man."

In further support of the appeal counsel for appellant calls attention to portions of Lapsic's cross-examination showing discrepancies between the testimony given by him at the trial and that given by him at the preliminary examination, relating to the amount of money of which he was robbed and as to what occurred in the tavern during the evening before closing time. Appellant was doubtless entitled to cross-examine as to those matters for the purpose of impeachment, but obviously, even though such discrepancies were shown, the subject matter thereof was not of vital importance to the prosecution's case, for the reason that the determinative issue of fact the jury was called upon to decide was not as to how much was taken from appellant nor what occurred in the tavern, but was whether appellant was one of the men who committed the robbery; and the record shows that the positive testimony given by Lapsic on that issue was neither self-contradictory nor weakened by cross-examination.

Appellant complains of the trial court's refusal to allow the court reporter, who was called as appellant's witness, to read into the record his notes covering portions of the testimony given by Lapsic at the preliminary examination as to whether he had spoken to appellant in the tavern the night of the robbery. The record shows, however, that all such testimony had been previously read into the record by counsel for

appellant, from the transcript, during the cross-examination of Lapsic, and that no question was raised as to the correctness of the transcript. Consequently there was no error committed in refusing to allow the testimony to be read into the record a second time.

Appellant also contends that the trial court unnecessarily limited the cross-examination of Lapsic as to his mental condition, but the rulings made in this behalf are not of such serious nature as to serve as a basis for the reversal of the judgment. There was no claim made nor offer to prove that Lapsic's mental condition was such as to render him incompetent as a witness. In this connection the record shows that on some points Lapsic seemed to be affected with poor memory, but that factor was doubtless taken into consideration by the jury in determining whether it could rely on the positive testimony given by him that he was robbed, and that appellant was one of the men who robbed him. In particular, the ruling assigned as error was the sustaining of an objection to appellant's question as to whether Lapsic had ever been examined by a psychiatrist; but the record shows that immediately following the challenged ruling the witness was asked whether he had ever "been examined by a doctor, mentally," and he answered "No." Even assuming, therefore, that the trial court should have permitted the witness to answer the first question, the adverse ruling did not operate to appellant's prejudice.

Another matter about which appellant complains arises out of the following situation: On cross-examination, with some reluctance, Lapsic gave the name and address of the firm by which he was then employed, and upon further questioning he stated that his reason for desiring to withhold the information was that since the robbery he "had been followed." Counsel for appellant then entered upon and pursued a line of cross-examination as to the particular circumstances under which Lapsic claimed to have been followed, evidently in an attempt to show that no such thing had ever happened, and eventually the trial court sustained the prosecution's objection to further cross-examination on that point. As stated in California Jurisprudence (vol. 27, p. 96-8) the rule governing in matters of this kind is that while wide latitude should be allowed in cross-examination for the purpose of testing accuracy or credibility, especially if the witness is

a reluctant one, or is a witness against a defendant in a criminal case, nevertheless the trial court has discretionary power over cross-examination which will not be disturbed on appeal unless it appears that there has been an abuse of such discretionary power; that thus the trial court may confine an examination within reasonable limits, or may curtail a cross-examination which is unduly protracted, frivolous, or which relates to matters which are irrelevant, or have already been covered; and that likewise "the court may properly limit the number of questions which may be asked upon a given point." After reading the record herein, it becomes apparent that no legal ground exists upon which it may be held that the trial court abused its discretionary power.

The final assignment of error is misconduct on the part of the trial court and the assistant district attorney. The assignment, however, is not supported by any argument, citation of authority, or transcript references, and consequently may be disregarded. (See 4 Cal.Jur. 10-yr. Supp. 941.)

Nor is it necessary to devote any attention to the appeal from the order denying the motion for new trial for the reason that to all intents and purposes it has been abandoned. The record shows that the motion was made orally; that no grounds whatever were specified as the basis therefor; nor on this appeal has appellant made any attempt to point out wherein the trial court's order is erroneous. In that state of the record the motion cannot be made the subject of review on appeal. (*People* v. *Johnston,* 37 Cal.App.2d 606 [100 P.2d 307].)

The judgment of conviction and the order denying the motion for new trial are affirmed.

Peters, P. J., and Ward, J., concurred.