[Crim. No. 2308. First Dist., Div. One. Jan. 27, 1945.]

THE PEOPLE, Respondent, v. DAISY RICKMAN, Appellant.

Sol A. Abrams and Louis R. Mercado for Appellant.

Robert W. Kenny, Attorney General, and David K. Lener, Deputy Attorney General, for Respondent.

KNIGHT, J.—The appellant, Daisy Rickman, was found guilty by a jury of selling opium in violation of section 11160 of the Health and Safety Code, and as a punishment therefor she was sentenced to imprisonment in the county jail for a term of one year.

The opium was purchased from appellant by a woman operator in the employ of the State Narcotic Division, and the sale took place in front of a shoe shining stand operated by appellant on Jones Street at O'Farrell in San Francisco. The operator paid appellant the money on the afternoon of January 10, 1944, and the next day at appellant's request she called for the package, which appellant delivered to her and which was shown to contain opium. The shoe shining stand bordered on the sidewalk, and was located nearly opposite a garage, from which the stand could be plainly seen; and the transactions involving the payment of the money and the delivery of the package were witnessed from the garage by two state inspectors, named Simpson and Fennell. At the trial the prosecution did not reveal the identity of the woman operator, but rested its case on the testimony of the inspectors and the chemist who analyzed the narcotic. At the time of appellant's arrest she admitted to Inspector Simpson, so he testified, that she had been taking money from various people as they passed her stand, and later had delivered to them certain packages, but she claimed that the packages were given to her for delivery by one Julia Murray, to whom she paid the money so collected; and that she did not know that the packages contained narcotics. Appellant did not take the witness stand to refute any of the testimony introduced against her, and she produced but one witness. His testimony, however, failed to establish any fact helpful to appellant.

Following the pronouncement of judgment the attorney who had represented appellant up to that time was succeeded by appellant's present counsel, who present the appeal. They do not question the sufficiency of the evidence, nor do they challenge the correctness of any rulings on the admissibility of evidence, or of any of the instructions. The sole contention made is that appellant was not afforded a fair trial by reason of alleged misconduct on the part of the trial judge and the deputy district attorney, and on account of some alleged prejudicial statements made by the inspectors while testifying in the case. There is no merit in any of the points so urged.

It is a general rule, subject to certain exceptions not here present, that complaints of misconduct will not serve as

ground for reversal unless the alleged impropriety was promptly called to the attention of the trial court and assigned as misconduct, so that the trial court is offered an opportunity to correct the irregularity and thus prevent any prejudicial effect thereof if that be possible. (8 Cal.Jur. p. 508, 511; and see cases cited in 4 Cal.Jur. 10-Yr.Supp. (1943 rev.) pp. 916-920.) In the present case there was a failure to comply with the foregoing rules.

It is also held generally that a judgment will not be reversed because of personal references to the counsel for the defense which cannot prejudice the defendant; and most of the criticisms here relied on fall within that class. (8 Cal.Jur. p. 623.) Furthermore, the law is well settled that a judgment of conviction will not be reversed where the appellate court is unable to perceive that the alleged misconduct had a material effect on the determination of the issues of fact, or where it appears that the effect thereof was unimportant or slight; and especially is this true where as here the guilt of the accused has been established by clear and convincing evidence. In other words, a reversal is not warranted except in clear and extreme cases, and unless the misconduct is obviously so flagrant and prejudicial that in the opinion of the appellate court based on a review of the entire record, it has resulted in a miscarriage of justice. (8 Cal.Jur. 621; 4 Cal.Jur. 10-Yr. Supp. (1943 rev.) pp. 1006-1010.)

Considered in the light of the legal principles last above stated, it is evident that the remarks and statements specified by appellant as constituting misconduct fall far short of being such; much less can it be said that they were of such a nature as would serve as ground for reversal. The complaints directed against the conduct of the trial judge have as their basis the following: In attempting to impeach the testimony of one of the inspectors by the use of the transcript of the testimony given at the preliminary examination, counsel for appellant was following a method which the judge deemed was not in conformity with the established rule, and he said: "The proper way to do it, if I may suggest it . . ." and he then went on to state the correct procedure as laid down by the court decisions; whereupon counsel for appellant stated: "Your Honor is taking the attitude of attempting to make counsel look ridiculous before the jury." It is quite obvious that fairly construed the remarks of the judge carried no such implication; and certainly it cannot be said to be misconduct

on the part of the trial judge to call counsel's attention to the correct rule governing matters of impeachment when it is apparent that such rule is not being followed.

Later, counsel for appellant began cross-examining the inspector as to how the operator was dressed, and the deputy district attorney, evidently believing that counsel's purpose was to ascertain the identity of the operator, interrupted by saying: "I think we are getting very close to the privileged testimony" (referring to Code Civ. Proc., §1881). Counsel for appellant argued that he had "not asked for the name yet"; whereupon the judge remarked, "he [referring to the deputy district attorney] only said it was getting dangerously near." Shortly thereafter an objection was sustained to the line of examination then being pursued, and counsel for appellant complained that he had not been given an opportunity to argue the point. In response the judge said: "Well, it is so obvious—we have it every day, so many times down here, that we don't waste our time. If you want to argue it, go ahead," which counsel proceeded to do, stating among other things that he was entitled to ask the questions for the purposes of impeachment. The court replied, "Well, I will allow it if you want it for impeachment purposes." Thereupon counsel resumed the line of examination he had been pursuing at the time the objection was made and sustained. It would seem to require no comment to demonstrate that there was nothing in the attitude or remarks of the trial judge that amounted to misconduct.

On direct examination of Inspector Simpson he testified that he saw the operator hand appellant the currency, and saw appellant take it and place it in the pocket of her smock; and on cross-examination the following occurred: "Q. Now, you say that the objects that were being passed were green like money? A. It was money. Q. What color? A. Green. Q. Is money green? A. Yes, paper money. Q. You have seen paper money, haven't you? A. A little, yes. Q. I show you here a five-dollar bill and I will ask you what color that is. A. It has the appearance of green. Q. Does that look green to you? A. Yes. Q. What color does this look like? A. That looks green, also. Q. That one looks green to you? A. Yes. Q. Have you ever been advised that you are color blind? A. No. Q. Can you distinguish between green and grey? A. Well, I passed the army test and they didn't tell me I was color blind in the army. Q. I wish you would not volunteer

all of these answers. The Court: He has a right to defend himself and tell you why he is not color blind." Counsel for appellant: "It is not a question of whether he passed the army test or not. The Court: Let us get through with this case some time." Counsel then proceeded to interrogate the witness as to whether he could "say positively" that what he saw passed was money, and the witness replied, "I would say it was money. If you ask me for a direct answer, I will say it was money." It is apparent that under the circumstances above set forth the comments made by the judge were fully justified.

Two criticisms are directed against the conduct of the deputy district attorney, but they are trivial and therefore do not require special attention. At the most the remarks complained of involved only personal references to counsel's manner of conducting the cross-examination. The remarks were not discourteous and could not possibly have resulted in prejudice to appellant; that being so, they may be dismissed without further comment. (8 Cal.Jur. p. 623, note 6.)

With regard to alleged prejudicial statements made by the inspectors, the record shows that all but a few of those complained of were, on motion of counsel or by the court of its own motion, stricken out and the jury was instructed to disregard them. As to the first of the remaining ones the record shows that on direct examination Inspector Simpson was asked the question: "What further, if anything, happened on the day of the 10th there, if you recall?" and he replied, "Well, I observed people associating with the defendant that had long narcotic records"; whereupon counsel for appellant remarked, "The witness knows that that is objectionable." As will be noted, the answer was responsive to the question; but even though it could be deemed to be objectionable, it was not assigned as error, nor did counsel move to strike it out or ask the court to instruct the jury to disregard it. Therefore appellant is not in a position to complain thereof on appeal.

Nor does it appear that any of appellant's legal rights were violated by the inspector in relating the conversation that took place between him and appellant following her arrest. The entire conversation pertained to the subject of her arrest, and it appears that whatever affirmative statements that may have been made by the inspector during the conversation were made in response to appellant's inquiries

as to the identity of the person or persons who had brought about her arrest, or in response to her claim that she did not know the contents of the packages she had been delivering to the persons from whom she had been collecting the money.

 Shortly after appellant's arrest counsel called Inspector Simpson on the telephone and requested permission to see the report on the case. The request was refused, and on cross-examination the inspector was interrogated about the telephone conversation. In narrating that portion thereof as to the reasons for the refusal the inspector stated among other things that he told counsel that such reports were confidential and furthermore that he would prefer to have no further conversation with counsel about the matter because of certain information given to him "around the police department" concerning counsel's reputation. As will be noted, the telephone conversation was brought into the case by counsel in answer to counsel's questions; moreover, after the inspector had been asked for and had given his version of it, there was no motion made to strike out any part of it, nor was any part of it assigned as error. Consequently no error is shown.

After reviewing the entire record, it is our conclusion that appellant was afforded a fair trial; and therefore, since the evidence is admittedly sufficient to sustain the conviction, the judgment should be affirmed. It is so ordered.

Peters, P. J., and Ward, J., concurred.