[Crim. No. 2687. First Dist., Div. One. Dec. 6, 1950.]

THE PEOPLE, Respondent, v. ALLEN COLEMAN, Appellant.

Leo A. Sullivan and Edwin A. Connor for Appellant.

Fred N. Howser, Attorney General, and David K. Lener, Deputy Attorney General, for Respondent.

BRAY, J.—Defendant and one Haynes were tried by the court without a jury for violation of section 11500 of the Health and Safety Code (transportation of heroin). Haynes was acquitted and defendant convicted. Defendant appealed from the judgment of conviction and from the order denying a new trial.

### FACTS

Defendant and Haynes were seamen aboard the transport "Hugh J. Gaffney," which on October 10, 1949, arrived at Oakland after a 28-day voyage from Yokohama. In the afternoon it shifted berth to Fort Mason, San Francisco. Haynes left the ship at Oakland, came to San Francisco and borrowed a sedan from his brother-in-law. He met the ship at Fort Mason, picked up Coleman, and four or five other shipmates, and drove them to a barbershop in the Fillmore district where they had several drinks. When Haynes and defendant left the barbershop, Haynes was to drive defendant to Oakland to a party being given by a girl friend of defendant. However, instead of going directly there, they claimed they were going out to Divisadero Street to pick up a cousin of Haynes, so that Haynes would not have to return from Oakland alone. He claimed that the car's battery was weak and he needed someone to push the car after stopping to get it started. Apparently some time elapsed between the time they left the barbershop and when they were arrested. Haynes said it was about an hour and they were "Just riding and looking." They had not yet gone to the cousin's home. Haynes claimed they left the barbershop around 8 or 8:30 that evening.

About 11:15 Officers Van Dervort and Keating of the Special Narcotics Detail noticed the car in which Haynes and defendant were riding, driving without lights. The officers' car followed it for two blocks, then turned on the siren and red lights, and forced the car to the curb. Keating, who was driving, got out of the police car on the left side, Van Dervort on the right. As they approached the Haynes car, Van Dervort was in advance of Keating. Both officers noticed a "commotion" in the front seat. Keating noticed defendant lean forward in his seat at an angle of about 45 degrees from the perpendicular. As Van Dervort put his hand on the right front door he saw defendant lean forward and make a throwing motion with his right hand between his legs toward the floor of the car. He at no time saw anything in defendant's hand. Van Dervort then pulled defendant out of the car, and reaching under the seat at the point where he had seen defendant make the gesture, found a small bottle containing a white powder. Van Dervort asked defendant why he had been bending over and defendant stated that he was just bending forward, but gave no reason for so doing. It is not clear from Van Dervort's testimony as to when he asked this question of defendant. Haynes testified that before Van Dervort discovered the bottle the latter asked defendant, "What is that you put under the seat?" Defendant denied putting anything under the seat, and both he and Haynes denied any knowledge of the bottle or its contents. Both officers put their initials on the bottle, and Van Dervort "[t]ook it to the City Prison and booked it as evidence." Van Dervort identified a bottle with white powder in it as the bottle he found in the car. It was then marked for identification. A chemist for the State Division of Narcotic Law Enforcement testified that he received this bottle from the Police Property Clerk's office, examined its contents and found it to be 31 grains of heroin.

1. *Sufficiency of the Evidence.*

Defendant contends that the evidence is insufficient to prove him guilty of transportation of heroin. He stresses the fact that Van Dervort saw nothing in defendant's hand when he made the throwing motion. However, the throwing motion plus the finding of the bottle at the place indicated by the gesture, raises the reasonable inference that defendant threw it there. He further contends that the evidence is improbable and contradictory. He points out that at the preliminary examination Van Dervort first stated that it was

Haynes who made the throwing motion. It is obvious from an examination of the part of the transcript read into evidence that while he said "Haynes," he meant defendant. In the very connection in which he used Haynes' name he pointed out that Haynes was in the driver's seat and the throwing gesture was made by the man sitting alongside of him. Moreover, at the preliminary examination, as soon as the matter was called to his attention he corrected the mistake. In any event, it was for the trier of the facts to determine Van Dervort's credibility and to reconcile any discrepancies in his testimony, if any there were.

 Defendant insists that there was a conflict in the testimony of the two officers as to where Van Dervort was when defendant leaned forward, contending that under Haynes' testimony, Van Dervort could not have seen a throwing gesture if one were made by defendant. A reading of the testimony shows that if there is a conflict it is more apparent than real. The resolving of such conflict is exclusively the province of the trial court. (*People* v. *O'Moore*, 83 Cal.App.2d 586 [189 P.2d 554].)

 The officers saw the automobile in motion with defendant in it, saw defendant act in such a manner as to justify the belief that he had the heroin in his possession when he threw it under the seat. This was sufficient to fully support the charge of transporting heroin. While mere possession of a narcotic is not evidence of transportation (*In re Chaus,* 92 Cal.App. 384 [268 P. 422]), here there was more than mere possession. Defendant was carrying the heroin in a moving vehicle. "To transport means to carry or convey and, under certain circumstances, to conceal." (*People* v. *Watkins,* 96 Cal.App.2d 74, 76 [214 P.2d 414].)

## LACUNAE IN THE PROOF

 The bottle containing the white substance which the officers testified they found in the car and which the chemist said contained heroin, while marked for identification, was never offered in evidence, nor was there any proof that it was in the same condition when examined by the chemist as when left at the City Prison by Van Dervort. The chemist testified he received it in a sealed envelope. Ordinarily it is necessary, before the admission of testimony concerning an analysis of an exhibit, to prove that it has not been tampered with between its original receipt and the analysis. But here such

procedure was waived by the conduct of defendant. When the chemist was called to the stand defendant, after stipulating to his qualifications, stated, ''I will go further, I will stipulate if there is a written report the Court may receive the report into evidence.'' Thereupon the district attorney asked the chemist for his analysis and he gave it, without any objection from defendant. ██ At no time in the trial court did the defendant make any objection to the procedure followed by the district attorney, nor make any objection that the powder analyzed by the chemist was not in the same condition as when found in the car, or that it was not properly connected up. It is too late to make such objection now. ██ Nor is the failure to offer the bottle and contents in evidence important. The jury could not tell by looking at the powder whether or not it was heroin. Introducing it in evidence would have assisted the jury in no way. Strictly speaking, the bottle need not have been produced at the trial. Where a witness testifies that he found a bottle containing a white powder, and a chemist says that powder, on analysis, proves to be heroin, there is no requirement that the bottle or powder be produced, at least in the absence of a demand by the defendant.

In *People* v. *Berryman,* 6 Cal.2d 331 [57 P.2d 136], a bottle which was found in deceased's car and on which were fingerprints of defendant was admitted in evidence after both sides had rested, but before argument. In discussing whether this was prejudicial error, the Supreme Court said (p. 339) : ''Even if there was error, it was harmless as it was already in evidence that the bottle had been found in deceased's car shortly after his death and that it bore the finger-prints of the defendant.'' A similar case to ours is *People* v. *Brown,* 92 Cal.App.2d 360 [206 P.2d 1095]. There the officers had seized a newspaper bindle containing a brown powder, placed it in an envelope which was marked for identification and sealed with sealing wax, marked with the officer's thumbprint. A chemist testified that he received the envelope (exhibit A for identification) from the property clerk, broke the seals, and analyzed the powder as heroin. To the contention of appellant, similar to that made here, the court said (p. 365) : ''When the exhibit was produced in court appellant had an opportunity to examine it for any signs that the same was tampered with, or to present any evidence, by way of cross-examination or otherwise, to that effect. The record discloses no objection by appellant either to the condition of the exhibit, or to the

testimony of the police chemist. Such an objection cannot be raised for the first time on appeal.''

## ALLEGED ERRORS

(a) *Motion to Dismiss.*

■ At the conclusion of the People's case-in-chief, Haynes' attorney moved for a dismissal as to his client, apparently on the ground of insufficiency of evidence and delay in bringing him to trial. Thereupon defendant's counsel stated that he made the same motions on defendant's behalf. The court then stated, ''All right. Have you got any evidence? I will take them under submission.'' The following then occurred: ''MR. SULLIVAN [counsel for defendant Coleman]: I move, under Section 1118 of the Penal Code, that an advised verdict be rendered in so far as the Defendant Coleman is concerned, on the ground the evidence does not establish a case whatsoever. THE COURT: All right, submitted. MR. SCHNEIDER [counsel for defendant Haynes]: Also, is Your Honor taking under submission the motion to dismiss? THE COURT: They are all submitted. MR. SCHNEIDER: On the ground of failure to bring the case to trial within the statutory period. THE COURT: Yes. Do you people rest your case or do you have evidence? MR. SULLIVAN: I am going to offer evidence. THE COURT: All right, proceed. MR. SULLIVAN: Of course, in the Information I believe the other defendant is named first. MR. SCHNEIDER: That is all right, we will put our man on the stand. THE COURT: It doesn't make any difference. MR. SULLIVAN: Whichever way the court wants to proceed— ordinarily the first-named defendant proceeds first.'' Haynes' counsel then put Haynes on as a witness.

At no time did defendant object to the court's taking the motions under submission nor did he request the court for an immediate ruling. It is too late to complain now. ■ Moreover, if it were error not to rule immediately, it was error without prejudice, as the court had sufficient evidence before it to justify a denial of the motions. It had Van Dervort's testimony, which, if believed (and the court did believe him) justified the conclusion that on the approach of the officers defendant had thrown heroin under the seat.

(b) *Keating's Testimony.*

■ When the examination of defendant's last witness was concluded, the court stated that he ought to give Haynes the benefit of the doubt as to his guilt. The district attorney then stated that before the court proceeded further he desired

to call Officer Keating, who was with Van Dervort at the time of the arrest and who had not testified. Defendant objected on the ground that plaintiff had already rested. He based this claim on the fact that at the end of the People's case-in-chief the district attorney had stated, "The People rest . . ." The district attorney pointed out that such a statement did not mean that he waived his right to rebuttal, and that he desired to call Keating in rebuttal. Thereupon the court permitted Keating to testify. Defendant's objection appeared to be mainly that the People once having rested could not offer rebuttal evidence. It is not clear if he intended to object that the evidence was not rebuttal evidence. He said: "THE COURT: He rested his case-in-chief. MR. SULLIVAN: No, Your Honor—how can you try a case in that manner, to put on a portion of his testimony after the defendant's case? What is he going to rebut? I will object at the proper time." At no time later did he make any objection. It is obvious that the statement that the People rest at the end of its case-in-chief was not a waiver of the right to rebuttal of any evidence defendants might produce. While the testimony of Keating could very well have been a part of the case-in-chief, the order of proof is entirely in the hands of the court, and we cannot say that the court abused its discretion in allowing Keating to testify, even though, strictly speaking, the testimony should have been given before defendant testified. Particularly is this so, in view of the statement of the court at the end of defendants' case, when it asked if Keating saw what occurred in the front seat: "That is the crux of the thing." The statements of the court at this time indicate that it was satisfied of defendant's guilt but wanted further evidence as it was not satisfied of Haynes' guilt. To deny the court the right to hear the testimony of the other eyewitness because of order of proof would result in technical absurdity.

 Again, had the prosecution closed its case, which it had not, "The matter of allowing a party to reopen his case for further evidence is one committed to the discretion of a trial court." (8 Cal.Jur. p. 239, § 307; see, also, *People* v. *Berryman, supra* [6 Cal.2d 331].)

(c) *Failure to Allow Defendant to Present Proof of Diligence.*

 On February 17, the day the court found him guilty, defendant interposed a motion for a new trial. This motion was continued to February 24 and then from time to time to March 10. On February 28 he filed an affidavit of Elihue

Hill to the effect that on October 10, the day of the arrest, Hill, a shipmate of Haynes, rode with Haynes from Oakland to San Francisco in the same car in which later Haynes and defendant were arrested; that Haynes stated that he was "hot," and when asked what he meant, took out of his shirt pocket a small bottle containing a white powder which he showed Hill. On March 10, the record shows that the following occurred: "(The defendant personally appeared) MR. SULLIVAN: May it please the Court, we are here on the motion, Your Honor. THE COURT: I have gone over this motion, and I will deny the motion for new trial." Now, defendant contends that he was denied the right to argue the motion or to show why Hill was not called to testify at the trial. Inasmuch as defendant made no request to argue, nor to present additional evidence, his contention is without merit. He filed Hill's affidavit on February 28. Defendant and his counsel were present in court on March 1, March 3, and March 7, when the motion for new trial was continued and made no effort to file affidavits showing diligence.

### DENIAL OF MOTION FOR NEW TRIAL

Defendant contends the court erred in denying his motion for new trial on the grounds of insufficiency of evidence, improbability of the evidence, and the matters contained in the Hill affidavit. We have already discussed the first two grounds under the heading of the sufficiency of the evidence. So far as the Hill affidavit is concerned, it cannot be grounds for a new trial, without some showing of *why* Hill was not called at the trial, and as pointed out before, defendant made no effort to make such showing. The granting of a motion for new trial is a matter in the discretion of the trial court, and as said in *People* v. *Coleman*, 83 Cal.App.2d 812, 817 [189 P.2d 845], "no satisfactory showing was made as to why in the exercise of due diligence it [the alleged new evidence] could not have been discovered sooner and presented at the trial." (See, also, 8 Cal.Jur. p. 427, § 452.) Defendant contends that Hill's story completely exonerates defendant. That contention overlooks the fact that, even assuming that Haynes had the bottle that afternoon, it was defendant who was seen throwing something under the seat at the exact point where the bottle was immediately found.

The judgment and order are affirmed.

Peters, P. J., and Wood (Fred B.), J., concurred.