[Crim. No. 5000.   Second Dist., Div. One.   July 28, 1953.]

THE PEOPLE, Respondent, v. HAZEL E. SILVA, Appellant.

Philip S. Schutz for Appellant.

Edmund G. Brown, Attorney General, and Norman H. Sokolow, Deputy Attorney General, for Respondent.

WHITE, P. J.—In an information filed by the district attorney of Los Angeles County, defendant was charged with the crime of violation of section 11500 of the Health and Safety Code, in that on or about August 4, 1952, she unlawfully had in her possession a preparation of heroin.

Following the entry of the plea of not guilty and appropriate waiver of jury, the People's case was by stipulation submitted on the transcript of the preliminary examination. At the trial defendant presented testimony in her own behalf. Defendant was adjudged guilty of the offense charged. Her motion for a new trial was denied, as was an application for probation, and she was sentenced to the county jail for a term of six months.

From the judgment and the order denying her motion for a new trial, defendant prosecutes this appeal.

Stating the evidence in a manner most favorable to the prosecution, as we are required to do on an appeal from a conviction in a criminal case, the record reflects that Charles Hille, a police officer of the city of Los Angeles, assigned to the Narcotics Division, was in a police car parked on the southeast corner of First and Beaudry Streets in the city of Los Angeles, with Officers Pena and Neale, shortly before 8:45 p. m. on the evening of August 4, 1952. Officer Hille observed a 1949 Buick automobile with a Nevada license plate northbound on Beaudry. The officer drove the police car in behind the Buick which was being operated by the defendant. There were two other women in the automobile, one being Benita Ramirez, who testified at the trial. After crossing First Street, the Buick stopped at the northeast corner of Beaudry and Diamond Streets. Officer Hille parked the police car just behind and about 4 feet west of the left side of defendant's vehicle. Officers Pena and Neale both got out and proceeded up the sidewalk to intercept a man who had been standing at the side of a building. As this man approached the Buick and leaned in to talk to the occupants, Officer Pena seized him and "started shaking him down."

At this time Officer Hille got out of the police car on the driver's side, walked up to the left-hand side of the Buick, and standing a little to the rear watched defendant. The latter's head was pointed in the direction of Officers Pena and Neale and the man being searched. Defendant moved her left hand from her lap to the vicinity of the neck of her dress. Officer Hille identified himself and defendant dropped her hand back to her lap. The officer opened the car door

and asked defendant to get out. She did so. The officer then took hold of her wrists. She complained of having a sore wrist. The officer told her not to twist and she would not hurt herself. He advised her she was under arrest. She said she did not know what he was talking about. She spun in a "half turn" to her left, pulling her left hand from the officer's grasp. The officer stepped around to his right, the same direction she was going. He observed her put her hand back to the vicinity of the neck of her dress and remove a small white package. He grabbed for her hand as she bent over. To the officer it appeared as if she was intending to swallow the object. According to the officer she did not have an opportunity to take her hand down because he got hold of her left hand again. After this activity defendant and the officer were just adjacent to the front wheel of the police car. The officer called for assistance from his fellow officers. After defendant was handcuffed and a brief search made of the vehicle, Officer Hille looked under the police car with his flashlight. He observed the package.

While he did not actually see the package leave defendant's hand, he had hold of her hands during the entire transaction with the exception of the second or two during which defendant got the one hand free. He noted that it was "a glassy white object that appeared about the size of a marshmallow."

Officer Hille rolled the police car back 4 or 5 feet and picked up the package. From the place of the tussle, "it was immediately underfoot and approximately 10 inches east or under the police car." He walked to the side of the police car and showed it to defendant. He said: "I found it." Defendant made no comment. The street was newly paved. It was swept clean. There was no debris under the police car. There was a street light and lights from a grocery store which was open on the corner.

The package (People's Exhibit "A") was transmitted to William G. Penprase, qualified forensic chemist with the Los Angeles Police Department, who examined the contents August 5, 1952. There were 10 capsules each containing a powder-like material, and a piece of paper. Mr. Penprase tested the capsules. In his opinion each contained heroin.

At the trial, Mrs. Benita Ramirez, one of the occupants of the car, testified for the defendant. She stated, among other things, that to her knowledge defendant had no narcotics in her possession that night nor did the witness; that the officers did not show her or defendant any object when they were in

the police car; that she did hear the officers say they found the "stuff."

Defendant testified, among other things, that she did not have any heroin in her possession nor any white package, that the first time she saw People's Exhibit "A" at close range was at the trial, that she heard the officer at the scene say: "I got it"; but that no object was shown her.

The sole contention made on this appeal is that the evidence is insufficient as a matter of law to sustain the judgment of conviction. In that regard, it is urged that there is no evidence that appellant had possession of the heroin found in the street under the police car, or that she threw it or dropped it into the street.

In considering a claim of "insufficiency of the evidence" the rules governing an appellate tribunal are thus stated in *People* v. *Newland*, 15 Cal.2d 678, 681 [104 P.2d 778]:

"The rule applicable where there is evidence, circumstantial or otherwise, that a crime has been committed and that the defendant was the perpetrator thereof, has been many times reiterated by the reviewing courts of this state as follows: The court on appeal 'will not attempt to determine the weight of the evidence, but will decide only whether upon the face of the evidence it can be held that sufficient facts could not have been found by the jury to warrant the inference of guilt. For it is the function of the jury in the first instance, and of the trial court after verdict, to determine what facts are established by the evidence, and before the verdict of the jury, which has been approved by the trial court, can be set aside on appeal upon the "ground of insufficiency of the evidence," it must be made clearly to appear that upon no hypothesis whatever is there sufficient substantial evidence to support the conclusion reached in the court below. The determination of a charge in a criminal case involves proof of two distinct propositions: First, that the offense charged was committed, and second, that it was perpetrated by the person or persons accused thereof . . . We must assume in favor of the verdict the existence of every fact which the jury could have reasonably deduced from the evidence, and then determine whether such facts are sufficient to support the verdict.' If the circumstances reasonably justify the verdict of the jury, the opinion of the reviewing court that those circumstances might also reasonably be reconciled with the

innocence of the defendant will not warrant interference with the determination of the jury. (Citing cases.)"

With the foregoing rules in mind we are here confronted with testimony given by Officer Hille as follows:

"I observed her (appellant) put her hand back to her clothing up near the neck on the left side, remove a small white package . . . In looking under the police car with my flashlight I observed a small package (identified at the trial as containing heroin) which I had seen in her hand previously."

"Q. Did you notice under the police car any quantity of debris whatsoever? A. No, it was swept clean. As I mentioned, it was a new portion of pavement there."

After describing the position of appellant and himself, during which time the former made a "half turn," the officer testified:

"Q. I take it that during that half turn you had ahold of some part of her body? A. I had ahold of both of her hands and when she spun around, she pulled her left hand out of my grasp.

"Q. What became of that left hand? Did you have it under your observation? A. At that time I stepped around to my right, which would be to her left, the same direction she was going, and I observed her hand go back to her dress and then she bent over in this manner and I saw her take something from her dress."

.   .   .   .   .   .   .   .   .   .   .   .

"Q. And during this time, within a matter of a foot or two from you, she reached up to the top of her dress and took something out and then took her hand down again, is that correct? A. Well, no, she didn't get a chance to take her hand down. When she reached for her dress, I grabbed for her hand at the same time.

"Q. What did she do then? A. Removed a small white object from her dress.

"Q. What did she do with it? A. I couldn't see what she did with it. I thought she was going to swallow it."

.   .   .   .   .   .   .   .   .   .   .   .

"Q. As a matter of fact, you don't know if anything was actually in her hand, then, do you? A. Yes, sir, I do.

"Q. You were within about a foot of her during this entire fracas, weren't you? A. Yes, sir."

Reviewing judges are, obviously, in no position to determine the credit which should be accorded to witnesses or to weigh their testimony. As has often been repeated, it is for this reason that the appellate courts are not authorized to review evidence, except where, on its face, it may justly be held that it is insufficient to support the ultimate issue involved, in which case it is not a review of a question of fact, but purely one of law. We are persuaded that from the foregoing testimony, the trial judge could *reasonably* draw the inference that appellant was in possession of the heroin in question, threw it under the police car, and that such possession was immediate and exclusive (Code Civ. Proc., §§ 1958, 1960; *People* v. *Coleman*, 100 Cal.App.2d 797, 800, 801 [224 P.2d 837]; *People* v. *Monge*, 109 Cal.App.2d 141, 143 [240 P.2d 432]).

The case of *People* v. *Foster*, 115 Cal.App.2d 866 [253 P.2d 50], strongly relied upon by appellant, is readily distinguishable from the case now engaging our attention. The conviction in the case at bar is not dependent upon any such ''tenuous theory'' as characterized the evidentiary features of the cited case.

For the foregoing reasons, the judgment and the order denying defendant's motion for a new trial are, and each is affirmed.

Doran, J., and Scott (Robert H.), J. pro tem., concurred.