[Crim. No. 3013.   First Dist., Div. One.   Aug. 23, 1954.]

THE PEOPLE, Respondent, v. JAMES E. TENNYSON, Appellant.

James E. Tennyson, in pro. per., for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, Raymond Momboisse, Deputy Attorney General, J. F. Coakley, District Attorney (Alameda), and St. John Barrett, Deputy District Attorney, for Respondent.

PETERS, P. J.—Defendant was charged with the unlawful possession of heroin, in violation of section 11500 of the Health and Safety Code, and with two prior convictions. He admitted the two priors, and pleaded not guilty to the main charge. He was represented at the time of his arraignment and trial by an assistant public defender of Alameda County. In propria persona he appeals from the judgment of conviction and from the order denying his motion for a new trial.

The evidence supports the judgment. On the night of October 7, 1953, three members of the Oakland Police Department vice squad, Myall, Coleman and Childers, by name, were assigned a four-door police sedan for their use. Before starting on their duties they took the automobile to the police garage and there cleaned out its interior with an air hose. In particular, they removed the back seat cushion and thoroughly air-hosed the area under it, removing all accumulated debris. Sometime after midnight the three officers were directed to investigate certain patrons of a café in Oakland. From the time that the car had been cleaned until the officers arrived at the café, no one, in addition to the officers, had been in the automobile, and at no time during the evening had the automobile been left unattended. Upon arriving at the café the officers took into custody the defendant and one Charles Percy. A search of the two men failed to disclose any weapons, or other illegal contraband. Defendant was then ordered into the back seat of the police car and told to keep his hands clasped in front of him. Officer Myall got in with defendant, and Percy got in the front seat with the other two officers. Myall testified that as defendant got into the car he observed defendant unclasp his hands, place

his left hand to the back of the rear cushion, shake his arm, and then shove what appeared to be a piece of cellophane behind the cushion. There was evidence that possessors of narcotics frequently carry such narcotics in packets up their sleeves or under their arms, which packets can be released by a shake of the arm. Myall made no immediate comment about what he had just observed, but told defendant that the officers had information that he was selling narcotics, and asked him if he had any in his possession. Defendant denied any such possession. Both Myall and Coleman testified that when the automobile arrived at the police station all got out, and, with the defendant standing beside the car, the two officers removed the rear seat cushion. Where defendant had been seated they discovered a cellophane packet containing three bindles of what, at the trial, was identified as heroin. Defendant denied that he had placed the packet behind the seat.

Defendant's narrations of these events differed from that of the police officers. He testified that, when he entered the police car, at the direction of Myall, he emptied all of his pockets; that he was then told that he was being taken to the station to see if there were any traffic warrants against him; that when they got to the police station he got out and stood about 25 feet from the car; that Officers Myall and Coleman searched the rear seat; that Officer Myall came over to him and asked him if the packet they had found was his; that he denied ownership, and then, and at the trial, denied ever using narcotics. Admittedly, when examined at the police station, no needle marks were discovered on his body, but his testimony that he had never used narcotics was impeached by a statement given by him to the police at the time of his arrest in 1951 in which he admitted the occasional smoking of marihuana.

The evidence supports the judgment. Appellant contends that there was no evidence that he was in actual or constructive possession of the heroin, or that he was aware of the nature of the contraband as required by *People* v. *Gory,* 28 Cal.2d 450 [170 P.2d 433]; *People* v. *Foster,* 115 Cal.App.2d 866 [253 P.2d 50]; and *People* v. *Cole,* 113 Cal.App.2d 253 [248 P.2d 141]. The point need not be labored that the evidence amply complies with all of the requirements of those cases. The evidence that the automobile was cleaned that night, that the heroin was discovered behind the rear seat where appellant had been seated, and that appellant was observed pushing the packet behind the rear cushion, amply

supports the finding of possession. Under substantially similar or weaker circumstances the courts, on numerous occasions, have held the evidence sufficient to show such fact. (*People* v. *Sweeney,* 66 Cal.App.2d 855 [153 P.2d 371]; *People* v. *Physioc,* 86 Cal.App.2d 650 [195 P.2d 23]; *People* v. *Agajanian,* 97 Cal.App.2d 399 [218 P.2d 114]; *People* v. *Coleman,* 100 Cal.App.2d 797 [224 P.2d 837]; *People* v. *Monge,* 109 Cal.App.2d 141 [240 P.2d 432]; *People* v. *Shepherd,* 118 Cal.App.2d 346 [257 P.2d 992]; *People* v. *Silva,* 119 Cal. App.2d 421 [259 P.2d 74]; *People* v. *Contreras,* 23 Cal.App.2d 547 [73 P.2d 647]; *People* v. *MacArthur,* 126 Cal.App.2d 232 [271 P.2d 914].)

Insofar as knowledge of the illegal nature of the contraband is concerned, that required element was sufficiently shown by the conduct and behavior of the appellant in attempting to secrete the narcotics. (*People* v. *Batwin,* 120 Cal. App.2d 825 [262 P.2d 88]; *People* v. *Walker,* 121 Cal.App.2d 173 [262 P.2d 640]; *People* v. *Foster,* 115 Cal.App.2d 866 [253 P.2d 50]; *People* v. *Casas,* 77 Cal.App.2d 255 [175 P.2d 19].)

Appellant, without specific reference to the record, complains that his trial counsel, the assistant public defender, failed to represent him adequately, and urges that he was thus denied due process. Not only was no complaint of this alleged inadequate representation made to the trial court (*People* v. *Youders,* 96 Cal.App.2d 562 [215 P.2d 743]), but the record affirmatively discloses that appellant was adequately, competently and ably represented during the trial.

Appellant next urges that at the time of his arrest he was not taken before a magistrate and charged within the time limits specified by section 849 of the Penal Code. The record does not disclose any delay in violation of that section. Moreover, the record does not disclose that appellant ever raised this point in the court below. The point cannot be raised for the first time on appeal. (*People* v. *Arnest,* 133 Cal.App. 114 [23 P.2d 812].)

Appellant makes some complaint about the admission of evidence that he had been convicted of a "strong arm robbery" in 1944. This testimony was given on the direct examination of appellant in response to questions asked by his own counsel. Appellant is in no legal position to complain of the admission of such testimony.

The evidence that appellant had made a statement to the police in 1951 in which he admitted to the smoking

of marihuana was admissible for impeachment purposes. Appellant, on direct examination, testified that he had never used any kind of narcotic, and, in particular, had never used marihuana, and did not even know that name. The inconsistent statement was then introduced to impeach him. This was proper under section 2052 of the Code of Civil Procedure.

Moreover, no objection was made to this evidence at the trial. This constituted a waiver. (*People* v. *King,* 114 Cal. App.2d 95 [249 P.2d 563].)

The record discloses that appellant had a fair trial and was competently represented. The jury elected to believe the police officers and to disbelieve him. The evidence of the police officers supports the conviction. We are not permitted to reweigh that evidence on this appeal.

The judgment and order appealed from are affirmed.

Bray, J., and Wood (Fred B.), J., concurred.