[Crim. No. 5358. Second Dist., Div. Two. Jan. 30, 1956.]

THE PEOPLE, Respondent, v. CARL LEE ASHCRAFT, Appellant.

Carl Lee Ashcraft, in pro. per., for Appellant.

Edmund G. Brown, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Respondent.

MOORE, P. J.—Appellant was convicted under count 1 of second degree robbery; under count 2, of robbery in the first degree and of having been armed at the time. He admitted two prior convictions of robbery and one for burglary. He asserts no claim of the insufficiency of the evidence herein, but seeks a reversal of the judgment on the grounds of insufficiency of the indictment and asserted errors in rulings at the trial.

The facts impliedly found under count 1 prove that on May 10, 1954, as the witness Hawthorne was about to leave the service station where he worked in Compton, appellant ran toward him with his arm under his coat. When Hawthorne ran for the front door, appellant arrived first, shoved the terrified man behind his desk, ordered him to get down. When the latter reached the floor, his cash drawer fell. Appellant paid no heed to his victim's plea for safety but continued to force Hawthorne down and ordered him to remain on the floor for 10 minutes. Appellant fled with $550

in cash and checks. In one minute Hawthorne notified the police.

The facts found in support of count 2: J. W. Young was employed by the Avalon Farms Dairies drive-in, Compton, May 24, 1954, at 8:30 p. m. When appellant with his companion, one McNicholl, entered in a convertible car, he ordered two quarts of milk and a half pound of butter. As Young was returning with the products for appellant, McNicholl duplicated appellant's order, whereupon the car door slammed. Instantly Young felt a gun against his back, held by McNicholl. At the same time appellant approached a refrigerator box, where Mr. Bradbury was at work, held his hand in his coat pocket and pointed it at Bradbury. Thereupon Bradbury and Young were forced to precede the two robbers who ordered Young to open the safe. On Young's announcement that he did not know the combination, appellant ordered Bradbury to get the safe open. On the latter's compliance, appellant pulled out a canvas bag. Having failed to open the lower half of the safe, the brigands ordered their victims to try the big safe at the rear. At that juncture, Mr. Costin and his 3-year-old son entered to purchase milk, when Young told him to get the cops, "there is a hold-up." Thereupon, McNicholl ordered Young to dump out the drawer of the cash register. Young, on McNicholl's orders, handed the bills in the amount of $110 to the latter. The two robbers then entered their car and departed. Having made a note of the license number of the vehicle, Young gave it to the deputy sheriff. When that officer within the hour discovered the convertible, it bore a different license number and was parked near Jess's bar. Simultaneously with the discovery of the convertible, Officers Bibe and Weinberg hailed appellant as he approached his car. He admitted his identity and presented his wallet wherein the officers found $57 in currency in denominations of $1.00 and $5.00 bills. A search of his pockets produced a key which appellant declared belonged to his trunk in his room. But it fitted the ignition of the convertible.

At the South Gate Police Department on May 26, Deputy Sheriff LeBas and Detective Sergeant Foster conversed with appellant. He voluntarily and freely stated: "I know you have got me on robbery. I don't think those people over there could identify me. I had my teeth out and it distorts my face. . . . But I was there and I was on the job. . . . Yes, I was on that one [the robbery at the service station],

but I don't think that fellow could identify me; he never turned around to look at me. I snuck up in back of him." He admitted that another party was with him but said "no one saw him." He did not use a gun at the service station. He bought a gun for $5.00 in a bar in Long Beach a couple of days before the dairy robbery. At the service station he had used a hammer in his jacket pocket.

On the same day, Deputy LeBas with Sergeants Foster and Hancock accompanied appellant to the home of Mrs. Traylor, appellant's cousin in Los Angeles. She admitted them. In answer to her inquiry, appellant stated that he had to go away for a while and must get some things out of the garage for the officers. In the garage, appellant went to one corner. The deputy told him to designate the place where the plates and gun were, and he would take them. Appellant pointed to a wooden lug box from which the officer took two license plates and a gun.

During the evening of the same day, at the South Gate Police Station, when told that the victim of the robbery at the station had recognized appellant as one of the robbers, Ashcraft replied: "I didn't think I gave the man a chance to look at me." He told the officer that he used no gun but had a "ball peen hammer" without a handle. He said he knew they "have me dead bang on this dairy job," but would tell no names. However, he offered to give information that would lead to the identity of his partner if the officer would promise "not to file the Compton job on either me or my partner." He admitted that the money in his possession when arrested came from the dairy.

In rebuttal of the asserted alibis testified to by appellant and McNicholl, the prosecution proved that the latter had admitted to having robbed the dairy on May 24, 1954; had identified appellant as his partner; said the convertible belonged to appellant and that the latter had driven it to the robbery; that the gun used at the robbery and the license plates then on the car were given to him by appellant who had directed him to change the plates while the automobile was parked at appellant's home.

■ The indictment was valid. The first count charged that Ashcraft "on or about the 10th day of May, 1954, at and in the County of Los Angeles . . . did willfully, unlawfully, feloniously and forcibly take from the person and immediate presence of Walter Hawthorne the following described personal property, to wit: checks of the value of $200.00 lawful money of the United States, and Three Hundred

Fifty Dollars ($350.00) in money, lawful money of the United States, all of the value of Five Hundred Fifty Dollars ($550.00) lawful money of the United States, in the possession of Walter Hawthorne, which said taking was then and there without the consent and against the will of the said Walter Hawthorne and was then and there accomplished as aforesaid by the defendant by means of force used by said defendant upon and against the said Walter Hawthorne and by said defendant then and there putting the said Walter Hawthorne in fear.''

The second count in substantially the same language accuses Ashcraft of robbery, in violation of section 211 of the Penal Code, a felony, committed on or about May 24, 1954, in that appellant took $100 in lawful money from the possession of Gene W. Young by means of force used by appellant against said Young, by putting said Young in fear; that at the time of said offense, defendant was armed with a .38 revolver.

Section 952 of the Penal Code provides that each count of an indictment shall contain, in substance, a statement in ordinary and concise language that the accused has committed some public offense therein specified declaring the matter ''in any words sufficient to give the accused notice of the offense of which he is accused.''

The indictment fully complies with section 952 insofar as language can be framed. That it declares a robbery is clear from the terms of section 211 of the Penal Code which defines robbery as the felonious taking of personal property from the person or immediate presence of the possessor and against his will, accomplished by means of force or fear. We have held that the validity of an indictment cannot be questioned when drawn in accordance with the requirements of section 952, *supra*. (*People* v. *Gordon*, 71 Cal.App.2d 606, 611 [163 P.2d 110].)

The allegations concerning prior offenses are sufficient. It is enough to declare that, before the commission of the offense charged, the accused had been convicted of a felony, setting forth the date of the judgment of each conviction and the state and locale of each such judgment. (Pen. Code, § 969; *In re Boatwright,* 216 Cal. 677, 681 [15 P.2d 755].)

It is not essential to allege that proof was made to the grand jury that the accused had suffered prior convictions.

The only purpose in alleging a prior conviction is to advise the ''Board of Prison Terms and Paroles'' of the fact

to enable them to determine the proper term of punishment in the event of conviction. (*People* v. *Stoddard*, 85 Cal.App.2d 130, 138 [192 P.2d 472].) Its allegation is imperative, if known. (Pen. Code, § 969.)

 The law does not require the indictment to allege that the accused served a term in a state prison for a prior conviction of burglary, or that he had served separate terms for prior convictions of robbery and of burglary. Section 969, Penal Code, requires merely that all known prior convictions for felonies in this state or elsewhere must be charged. The indictment is sufficient if appellant's prior convictions are alleged, although he may have served no term at all. (*People* v. *Clapp*, 67 Cal.App.2d 197, 199 [153 P.2d 758].)

 It was not necessary to the validity of the indictment that Mr. Young appear before the grand jury concerning the robbery. Any competent witness to such a felony is sufficient to authorize an investigation and the return of an indictment. (Pen. Code, § 921.)

 Inasmuch as no attack was made upon the indictment prior to the trial, all objections thereto are deemed to have been waived. (Pen. Code, § 996.)

 Appellant complains that he was denied a fair trial in that the jury gained evidence of his prior felony convictions. No objection was made by appellant to any evidence with respect to his previous impacts with the law. In fact, the only mention before the jury of appellant's criminal escapades was by his own counsel in his voir dire examination of the jury panel and by his cross-examination of the investigating officers. A specimen of such inquiries is copied in the margin.*

---

*"Q. Well, now, what else did you talk about during the course of this conversation? A. We talked about some robberies that he had pulled four or five years ago.

. . . . . . . . . . . .

"Q. Well, now, as a matter of fact when you discussed this matter with him did you not say to him that you thought he had left town, wasn't there? A. I think that was possibly when we were talking about some robberies earlier in the spring. I think he told me that he went to Las Vegas soon after those market robberies.

"Q. Soon after what? A. After some market robberies a partner of his had pulled.

. . . . . . . . . . . .

"Q. Did you say because he had a record that you felt he ought to leave town? A. No.

. . . . . . . . . . . .

"Q. Well, you knew Ashcraft, didn't you? You had seen him before? A. I recognized Mr. Ashcraft from his release picture which I had seen earlier in the spring. I saw Mr. Ashcraft on the street one day and I recognized him as being Mr. Ashcraft."

In view of such effort by appellant, it now ill behooves him to ascribe his own tactics to the district attorney. If appellant was displeased with the efforts of his counsel, he should have lodged his complaint with the trial judge in order that the latter might have removed improper impressions with correct instructions. (*People* v. *Garrow*, 130 Cal. App.2d 75, 77 [278 P.2d 475] ; *People* v. *Tennyson*, 127 Cal. App.2d 243, 246 [273 P.2d 593].) He made no such complaint. Having thus failed to repudiate the efforts of his counsel and not having moved to strike the evidence, the latter's acts are imputed to appellant (*People* v. *Youders*, 96 Cal.App.2d 562, 569 [215 P.2d 743]), and no error is shown. (*People* v. *Rickman*, 67 Cal.App.2d 711, 717 [155 P.2d 374] ; *People* v. *Meraviglia*, 73 Cal.App. 402, 406 [238 P. 794].†)

Appellant assigns as prejudicial error the court's rulings in excluding the testimony of Officer Scofield as to when the officer recognized appellant after the robbery and the date the officer had seen appellant on the street. ■ In the exercise of a sound discretion, the trial judge may determine the extent of the cross-examination. (*People* v. *Serpa*, 67 Cal.App.2d 327, 332 [154 P.2d 6] ; *People* v. *Corlett*, 67 Cal. App.2d 33, 57 [153 P.2d 595, 564].) ■ To warrant a reversal for the exclusion of extended cross-examination, it must be made to appear that the evidence sought was material to that given on the direct examination. (*People* v. *Malicoat*, 89 Cal.App.2d 742, 745 [201 P.2d 850].) Officer Scofield's testimony on direct related to his investigation of the Compton robbery and especially to his conversation with appellant at the South Gate Police Station. Such conversation had no bearing upon appellant's picture or upon appellant prior to their meeting at the police station. He there told appellant that his victim had recognized him but the officer did not testify that he had told appellant the victim had recognized him from a picture. Neither the date the officer recognized appellant after the robbery nor the date he had recognized appellant on the street, nor the reason he did not arrest appellant sooner, was within the scope of the direct examination. Under no known theory was the question admissible. ■ Assignment is made of the court's failure to give instructions relating to other crimes. Such failure was not

†Same: *People* v. *Brown*, 71 Cal.App. 181, 186 [235 P. 72]; *People* v. *Medalgi*, 94 Cal.App. 543, 547 [271 P. 552]; *People* v. *Bigelow*, 64 Cal.App. 731, 732 [222 P. 622].

prejudicial unless request had been made for such instructions. Having made no such request, appellant may not now complain. (*People* v. *McGoldrick*, 107 Cal.App.2d 171, 174 [236 P.2d 597]; *People* v. *Owens*, 79 Cal.App.2d 290, 299 [179 P.2d 401].)

There was no illegal search of appellant's home or unlawful seizure of his personal effects. It is true that after appellant's arrest, he voluntarily accompanied the officers to his home and assisted them in making a search of the garage for a gun and license plates. Such search was not in violation of the Cahan rule. (*People* v. *Cahan*, 44 Cal.2d 434 [282 P.2d 905]; *People* v. *Michael*, 45 Cal.2d 751 [290 P.2d 852]; *People* v. *Gorg*, 45 Cal.2d 776 [291 P.2d 469].) Appellant's home was with Mrs. Traylor. He told that lady he had got himself "in some trouble"; was going away for a while; had to get some things out of the garage "for these officers." When they entered the garage, Deputy LeBas directed him to point out the license plates and the gun. When the officer moved to take up a cardboard box, appellant pointed out a wooden box which hid two license plates and a gun. Such acts of the officers were all done under the leadership of appellant. Of course there was no improper search and seizure. (*United States* v. *Mitchell*, 322 U.S. 65, 69 [64 S.Ct. 896, 88 L.Ed 1140]; *United States* v. *MacLeod*, 207 F.2d 853, 855.) Moreover, no objection was interposed to such proof. The affidavit of Mrs. Traylor, appended to appellant's brief, is not a part of the record and cannot be considered. (*People* v. *Collins*, 117 Cal.App.2d 175, 184 [255 P.2d 59]; *People* v. *Gilpin*, 38 Cal.App.2d 24, 26 [100 P.2d 356].) She had testified at the trial that she had not seen the officers remove a gun from the garage.

Appellant asserts that the testimony of the officer concerning his extrajudicial confessions was unworthy of belief because he signed no written confession. There is no known rule imposing upon an officer the duty of requiring an arrestee to sign a writing. (*People* v. *Cokahnour*, 120 Cal. 253, 254 [52 P. 505].)

Judgment affirmed.

Fox, J., and Ashburn, J., concurred.