[Crim. No. 4981. Second Dist., Div. Three. Oct. 23, 1953.]

THE PEOPLE, Respondent, v. ROY A. LANTZ, Appellant.

Frederic H. Vercoe and Charles B. Robinson for Appellant.

Edmund G. Brown, Attorney General, and Michael J. Clemens, Deputy Attorney General, for Respondent.

SHINN, P. J.—Roy A. Lantz, the appellant, was convicted in a jury trial of three offenses of assault by means of force likely to produce great bodily injury. The victims were Raymond R. Marquez, Eddie Nora and Elias Rodela. Defendant's motion for new trial was denied and he appeals from the order of denial and from the judgments. His points on appeal are that the court improperly limited the cross-examination of two of the complaining witnesses and erred in refusing to give certain instructions requested by the defendant.

The assaults took place in the Los Angeles Lincoln Heights Jail during the afternoon and evening of December 25th, 1951. Defendant was on duty as jailer from 3 p. m. until 11 p. m. The three victims had been arrested at about 2 a. m. that morning, taken to central police station, then to the city hall, then to Lincoln Heights Receiving Hospital and to Lincoln Heights Jail. There was evidence that they had been beaten by officers at the central police station. The physician who examined them before they were booked at the Lincoln Heights Jail testified that he examined them and found that each was suffering from lacerations, contusions and bruises. Each of the victims testified that he had been repeatedly beaten by defendant who visited his cell about every half hour with other officers. Rodela testified that defendant kicked him in the stomach, knocking him down, struck him in the stomach with his fist, again kicked him in the stomach, knocking him down, struck him over the head three or four times with a heavy solid key ring, struck him hard blows on his face with his fist, cursed him and called him a "S.O.B. cop killer." The assaults took place on about eight occasions. Defendant wrapped a wet towel around his fist and struck Rodela hard blows on his head, shoulders and back of his neck. Rodela was seriously injured, a fact which is not questioned by defendant. Eddie Nora testified that he was cursed and beaten by defendant in much the same manner as Rodela. He was struck on the head with defendant's fist wrapped in a wet towel, knocked down and beaten on the head, kidneys, stomach and back of the neck; he was beaten after being knocked down. He suffered serious injuries from which he had not recovered nine months later.

Defendant struck Marquez a hard blow on the head with a big key ring. Defendant and other officers came to his cell ten or more times during the day. Marquez was struck hard blows on the head, stomach and kidneys by each of the other officers. He was knocked down by blows on the head administered by Lantz. Marquez' shoes had been taken from him; defendant stomped on his feet. Defendant asked him if he had learned a lesson and he said he had, and defendant said to him: "Well, when you get out of here, and I doubt if you will get out alive, you better get home, get your family, and get out of the country." Marquez had bruises all over his body, his face was swollen, one eye was black, his nose had bled and his feet were swollen. He received serious injuries.

■ The testimony of the complaining witnesses was corroborated by that of numerous police officers who were on duty at the jail during the time the injuries were inflicted. Officer Barclay testified that defendant escorted numerous officers to the cells of the prisoners on different occasions, that he heard a loud popping noise emanating from the cells and immediately thereafter saw defendant coming out of the cells with a towel. Officer Larsen testified that he saw officers strike or push Marquez and that he heard scuffling noises in Rodela's cell. Officers Coughlin, Barsley, Beck, Jensen, Long, Bell and Ross testified to having been in the cells with defendant and having witnessed defendant beating the prisoners severely. Officer Bell testified that 15 or 20 officers visited the cells and that a majority of them struck the three prisoners in the presence of defendant. Officer Schaffer testified that he had warned defendant on the night of December 25th, and that defendant replied that what had happened was "life insurance for the rest of us," and that the victims had been medically treated before they were booked and could not be "marked any more." Defendant testified that he had been a police officer for almost a year, that during the time in question he visited the individual cells of the three victims nine or twelve times but did not strike any of them or see any other officer strike them.

The victims had been arrested following a fight outside a bar between police officers and a gang of young men who were being investigated as to their ages and their right to be served with liquor. In the fight one officer was knocked to the ground and beaten, and another officer was beaten. There was evidence that Marquez, Rodela and Nora were participants in

the scuffle, which was ended when the son of the proprietor of the bar appeared with a rifle and ordered the fighting to stop. In the cross-examination of Marquez he was asked if he had been prosecuted for a crime. He answered that he had been and on motion the answer was stricken out and an objection was sustained. Defense counsel stated that the question was asked for purposes showing bias or motive of the witness. Certain proceedings were had in chambers. The witness was asked whether he had been booked for a crime on December 25th; an objection to the question was sustained. He was asked whether when he was released from jail he knew charges were pending against him; an objection to the question was sustained. He was asked whether he and his lawyer decided it would be best for him to claim he was beaten by the officers for the purpose of using that fact in his defense and to evoke sympathy. It was conceded by the prosecution that this would be a proper question to be asked before the jury, but the question was not asked. He was asked if he had been convicted of a misdemeanor, filed an application for probation, and told the story of having been beaten for the purpose of obtaining leniency from the court; an objection to the question was sustained. He was asked if the story came out in the newspapers, and an objection was sustained. He was asked whether he had testified before the grand jury to the same story he had told the probation officer; an objection was sustained. He was asked whether he had not testified to the beatings at the trial for the reason that he had testified to them before the grand jury. The district attorney had no objection to that question, but it was not asked before the jury. As to all of these questions defendant's argument was that the purpose of the questions was to show motive, interest and bias. It was stipulated that the witness had not testified before the grand jury that defendant Lantz was one of the officers who had beaten him, and also that Lantz had not been a witness against Marquez or the other defendants at their trials. Defendant proposed to ask similar questions of each of the other complaining witnesses, and the court's rulings were the same. It was stipulated that each witness would answer that he knew criminal charges were pending against him. Defendant proposed to ask the witness Rodela if he had not been arrested for petty theft, for being drunk, and for several violations of the vehicle code and other misdemeanors. Objections to these questions were sustained. Defense counsel proposed to ask Rodela if as a result

of several arrests he considered the latest arrests of the complaining witnesses to be improper. An objection was sustained. The foregoing questions were not asked before the jury. However, Rodela was asked: "Let us go back to December 24, 1951; you did not like policemen then did you?" To which he answered: "I didn't like them no."

It is urged that these rulings unduly limited the cross-examination of the complaining witnesses. That the greatest latitude should be allowed in cross-examination for the purpose of showing the state of mind of a witness, his interest in the case, his bias and prejudice, as stated in *People* v. *Senegram,* 27 Cal.App. 301 [149 P. 786], and other cases cited by defendant, is an elementary principle, universally recognized. If there was a reasonable doubt whether it was at all necessary to question the several witnesses in the manner proposed in order to establish bias or prejudice against the defendant, we would resolve that doubt in defendant's favor, but we do not believe that the argumentative line of questioning proposed by the defendant, if permitted, would have been of any advantage to him, or that he suffered any disadvantage or prejudice through the rulings of the court. Substantially it was proposed to ask each of the complaining witnesses whether the beatings administered by the defendant had aroused in him any feeling of bias or prejudice against the defendant. Of course the jurors would have understood that the victims of such brutal treatment could not have failed to entertain the strongest feelings of resentment and hatred toward the guilty officers.

 The court may and should limit the cross-examination of witnesses so as to confine it within reasonable bounds and curtail digressions which serve no purpose as proof of any disputed material fact in the cace. The fact that the witnesses felt sorely aggrieved over their mistreatment and that their feelings might have influenced them to exaggerate could have been and no doubt was dwelt upon in the arguments to the jury. But we can see no need whatever for permitting an inquiry into the feelings of the complaining witnesses against the defendant. It was absurd to even suggest that they might be other than feelings of revulsion and contempt.

The questioning also suggested that the complaining witnesses testified to their mistreatment at the hands of the officers in order to strengthen their defense against the

charges arising out of the brawl and to enlist the sympathy of the court. If there had been any basis at all for even suspecting that the stories of the victims had been invented, it would have been proper to follow any lines of cross-examination which would have tended to prove that they were invented for a purpose of self-interest. The testimony of the three victims was corroborated by overwhelming evidence of officers who testified that they had witnessed the shameful and inhuman treatment of the prisoners by the defendant. If the stories told by the victims were true, it was of no moment whatever whether it was a fact, or was believed by them to be a fact, that their suffering might influence the court to be more lenient with them for their own offenses. There was no improper limitation of the cross-examination of any of the witnesses.

Defendant requested an instruction based upon section 149 of the Penal Code, which provides: "Every public officer who, under color of authority, without lawful necessity, assaults or beats any person, is punishable by fine not exceeding five thousand dollars, and imprisonment in the county jail not exceeding five years." Defendant says this was an included offense for which lighter punishment could be imposed than for assault by means of force likely to produce great bodily injury, and that the court erred in refusing to give the instruction. If the instruction had been given it would have suggested that defendant may have been acting under color of authority in beating the prisoners, and it would have had a tendency to confuse the jury. Defendant was not acting nor purporting to act under color of authority. He was not performing or purporting to perform any duty as a police officer. His offense would not come within section 149 but under section 245, which defines the offense of which he was accused. The court gave an instruction on the included offense of simple assault, and defined that offense. This was sufficient. Upon the testimony of the People, and that of the defendant as well, it would have been error to give the instruction requested by defendant which had no application to the facts of the case. (*People* v. *Eggers,* 30 Cal.2d 676, 687, 688 [185 P.2d 1].)

The court sentenced defendant to one year in the county jail upon each count, two of the sentences to run consecutively and the other concurrently. Defendant says that the sentences were "very drastic and unwarranted by the nature and facts of the case," and that they were more severe than the courts

are accustomed to impose in similar cases. We cannot agree. We think the defendant was fortunate in escaping a term in state prison.

The judgments and order denying motion for new trial are affirmed.

Wood (Parker), J., and Vallée, J., concurred.