[Crim. No. 3669.   First Dist., Div. Two.   July 25, 1960.]

THE PEOPLE, Respondent, v. RANSOM LAMPKIN, Appellant.

Phillip M. Millspaugh, under appointment by the District Court of Appeal, for Appellant.

Stanley Mosk, Attorney General, Arlo E. Smith and Albert W. Harris, Jr., Deputy Attorneys General, for Respondent.

SHOEMAKER, J. — By separate indictments Ransom Lampkin was accused of selling narcotics on two occasions in violation of section 11500 of the Health and Safety Code. Defendant pleaded not guilty and on trial by jury was found guilty of both offenses. The court denied probation and sentenced defendant to state prison. From the judgments defendant appeals.

The evidence most favorable to the prosecution indicates the following: On April 22, 1958, Delores Davis met state narcotics agent McBee and federal narcotics agent Perry in Oakland. A police matron searched her at that time, following which McBee gave her $40 in currency and a handbag containing a radio transmitter. Perry then took her to North Richmond where she left the auto and rang the bell at defendant's home. Receiving no answer, she proceeded to "My Place," a café owned and operated by defendant since 1957 in association with Gladys Beaner, alias "Little Mama," and with whom the defendant lived as man and wife.

Mrs. Davis entered the café and defendant, who was talking to a policeman in front thereof, entered a few minutes later. Mrs. Davis asked defendant "what was happening?" Defendant asked her what she wanted, to which Mrs. Davis replied "a cap." Defendant then left the café and returned about five minutes later whereupon he asked Mrs. Davis to come into the restroom and there he gave her nine capsules and she gave him the $40 with which she had been supplied. By means of the aforementioned transmitter McBee overheard Mrs. Davis' and defendant's conversation up to the point where the latter left the café. Mrs. Davis delivered the capsules to Perry and they were later shown to contain heroin.

On April 25, 1958, following another search of Mrs. Davis' person, McBee again supplied her with $25 in bills dusted with fluorescent powder and the serial numbers of which had been recorded. McBee and Perry then drove Mrs. Davis to North Richmond. Mrs. Davis again went to the "My Place" café and, not finding defendant there, she returned to the agents' car. In a short time she went back to the café where she met Roosevelt Johnson, Lampkin's codefendant in this action, who gave her five capsules and for which she gave him the $25 in marked bills. Mrs. Davis then returned to the car and gave McBee the capsules, which were subsequently shown to contain heroin. A few minutes thereafter Mrs. Davis identified Johnson to the agents as he walked toward Lampkin's home where he was admitted. Later the agents joined repre-

sentatives of the sheriff's office and went to the defendant's residence where Deputy Clark was admitted by the defendant. Gladys Beaner entered the residence at the same time as did other officers and the agents. Clark testified as to what took place upon entering as follows:

"We were there at the head of the stairs and when Warden came there and Deputy Price, Mr. Lampkin says, 'What's coming off.' And I said, 'Mr. Lampkin, you know what's coming off more than I do.' He looked downstairs and said, 'Well, they caught me. McBee caught me making a sale to that woman he's got downstairs. I'm guilty, I might as well tell you,' and I said, 'Is this the first time you got caught selling narcotics?' and he said 'Yes,' and I said, 'The best thing you can do is cooperate and tell where you got the stuff hidden,' and he says, 'It's in my bedroom on the chest under the paper,' and I went and looked and said, 'It's not here, Lampkin,' and he said, 'McBee got it then. He's already taken it.' That was one statement. Later on he made another statement that—somebody asked what was coming off and he said, 'Narcotics, narcotics, I'm guilty. McBee caught me making a sale. I might as well admit it.' "

Clark saw Gladys Beaner enter Lampkin's bedroom and remove some money from defendant's jacket, which was hanging in the closet, and throw the money on the bed. Included therein were the bills which McBee had given Mrs. Davis earlier that day and which she had given to Johnson. When asked by McBee about the money defendant explained its presence in the jacket by saying that he had two visitors from Los Angeles that evening and that one of them must have put it there. Meanwhile, Johnson was arrested in the café and fluorescent powder was found upon his hands.

Defendant took the stand and testified that he had permitted Johnson to use his automobile on April 25 and that Johnson had a key to his home, that on April 25 he had requested Johnson to get him some razor blades and that when Johnson returned with the blades he was in the bathroom and did not see Johnson but was told by him that Mrs. Davis was at the café. He admitted to an understanding with Johnson that the latter could operate a gambling game in the café whenever it was safe to do so. At the time of the arrest, Johnson had been left in charge of the café while Gladys Beaner went home.

Defendant contends that as to his conviction involving the sale on April 25, 1958, the evidence was insufficient to connect him with the narcotics and their sale and argues that even

though Mrs. Davis purchased capsules containing heroin from Johnson in the café on that date, appellant was not present and that there is no showing that he had furnished Johnson with the narcotics involved in the sale.

Where a question of sufficiency of the evidence is involved, each case stands upon its own facts. ██ Here, it is undisputed that the April 25 sale occurred at the defendant's place of business, where he had personally sold narcotics to the same buyer three days earlier. The sale was made by a person with whom defendant was closely associated to a person known to both. The seller went immediately to the defendant's home following the sale. Later that day an officer saw Gladys Beaner remove the marked bills from the defendant's coat, which was hanging in the closet of his bedroom. In the light of these facts and the inferences readily drawn therefrom, there was substantial evidence from which the jury could conclude that the defendant either aided and abetted the April 25 sale or advised and encouraged its commission. (*People* v. *McNulty* (1959), 171 Cal.App.2d 86, 89 [340 P.2d 340].)

It is not necessary that a person directly and personally perform the act constituting a public offense to be held responsible in the commission thereof. Section 31 of the Penal Code provides: "All persons concerned in the commission of a crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense, or aid and abet in its commission, or, not being present, have advised and encouraged its commission . . . are principals in any crime so committed."

██ While it is true that possession of marked money standing alone is insufficient to prove an illegal sale of narcotics (*People* v. *Mateo* (1959), 171 Cal.App.2d 850 [341 P.2d 768], it is equally true that such possession following a narcotics transaction clearly supports an inference that the defendant was the seller (*People* v. *Wilkins* (1960), 178 Cal. App.2d 242 [2 Cal.Rptr. 908]).

Finally defendant contends that the judgment as to the sale of April 22 should be reversed because the court erred in refusing to permit him to cross-examine (1) Mrs. Davis as to whether or not she was addicted to dope and (2) one of the police officers as to whether he knew she was a dope addict. In making this contention he relies on the case of *People* v. *Bell* (1955), 138 Cal.App.2d 7 [291 P.2d 150]. However, in that case appellant was complaining of the trial court's action in preventing expert testimony as to the effect of drug addic-

tion on veracity. In upholding the trial court's action the court states at page 12: "[E]ven if addiction does cause a general predilection towards untruthfulness (a fact not supported by substantial medical authority—see 16 So.Cal.L.Rev. 333, 334), the witness could be impeached in this respect in this state only on cross-examination and not by production of other witnesses, experts or otherwise." Here no expert testimony of any type was ever offered or suggested.

In the present case the question on cross-examination of Mrs. Davis was whether she was a user of narcotics—to the police officer, as to whether or not he knew she was an addict —to each of which questions the district attorney's objection was upheld. While the officer was foreclosed as to stating his knowledge, it does appear that Agent McBee testified on his cross-examination that he knew that Mrs. Davis was a drug addict. The jury was therefore apprised of that fact for whatever it was worth. We also note that a motion was made to strike the testimony of Mrs. Davis on the ground that she was under the influence of narcotics and incompetent to testify, which was denied by the court with the observation that there was no question in its mind that the witness was coherent, responsive and able to testify. Even if we assume that the trial court in the present case did err in refusing to permit the witnesses to answer the questions propounded, in view of the clear evidence of the defendant's guilt we are unable to see how the defendant suffered any prejudice.

The judgments are affirmed.

Kaufman, P. J., and Draper, J., concurred.