[Crim. No. 7586.   Second Dist., Div. Four.   May 8, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. HARRY ERNEST SIMPSON, Defendant and Appellant.

George H. Chula, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Edmond B. Mamer, Deputy Attorney General, for Plaintiff and Respondent.

JEFFERSON, J.—In a second amended information filed by the District Attorney of Los Angeles County, defendant was charged with five counts of robbery in violation of Penal Code section 211. It was also alleged that defendant was armed with a deadly weapon at the time of the commission of the above offenses. Defendant pleaded "not guilty" and denied that he was armed.

After a jury trial defendant was found guilty on all five counts. The jury further found the crime to be of the first degree in each count and that defendant was armed with a deadly weapon at the time of the commission of the offenses. Defendant was sentenced to the state prison for the term

prescribed by law. He appeals from the judgment of conviction.

The facts, viewed favorably to respondent, are as follows: On Sunday, May 1, 1960, at approximately 11:30 p. m., at the Habit Bar and Grill in Inglewood, James Hollywood, Richard Goodall and defendant Harry Ernest Simpson agreed to rob the Hi Paisano bar. Each of the men was armed.

They arrived at the Hi Paisano at about 1:45 a. m. Hollywood entered first and ordered a bottle of beer. Shortly thereafter defendant and Goodall entered the establishment. Defendant, who was wearing a beard, walked to the telephone while Goodall walked directly to the men's room. Defendant obtained two women's stockings from a gunny sack which he was carrying. He pulled one over his head and gave one to Goodall. Defendant then pulled the telephone from the wall. He and Goodall produced their guns. Hollywood stepped away from the bar, drew his gun, and told the persons present to put their hands on top of the bar and their heads down. All of the persons in the bar were tied up with pieces of clothesline, and then their money was taken from their pockets and wallets. Their watches were also taken. Two or three persons came in and they were also tied up. Mr. Sneath, one of these patrons, made a remark and defendant hit him over the head with the gun. The gun was discharged. Goodall took $200 from the cash register and defendant took $800 from the open safe.

The trio left shortly after 3 a. m. and went to defendant's apartment where they divided the money and watches. Thereafter, three of the victims, Mr. Tempio, Mr. Jordinelli and Miss Joan Russell recognized defendant in a lineup at the police station.

A watch, identified by Mr. Sneath as the one taken from him, was found in the jacket used by defendant at his place of employment.

During the trial, Goodall testified that defendant was not present during the robbery of the Hi Paisano. He testified that three or four days before the robbery he first met a person, nicknamed "Whitey," and that it was the latter who helped him and Hollywood rob the bar. On cross-examination, Goodall denied directing officer Williams, the investigating officer, to where defendant lived. He also denied making statements to the officer about defendant's place of employment and defendant's participation in the robbery of the Hi Paisano.

In rebuttal, officer Williams testified that he spoke to Goodall about the robbery on the night of May 9, 1960. He further stated that Goodall told him that a person named "Ernie" had participated in the robbery; that Ernie had carried the rope around his body, with which they tied up the persons in the bar, and that Ernie got $600 from the safe. Goodall, according to the officer's testimony, directed him to Ernie's apartment and told him that Ernie worked on Century Boulevard for a manufacturer of small gasoline engines. After entering the apartment the officer associated defendant's last name, Simpson, with the "Ernie" (Harry Ernest Simpson) and determined the business location of defendant's employer. He then went to defendant's place of employment and arrested him.

Defendant first contends that James P. Hollywood, a co-defendant, was unlawfully induced to give testimony satisfactory to the prosecution in the hope of lighter punishment on one count and dismissal of other counts. This contention is without merit. Two months prior to defendant's trial, Hollywood pleaded guilty to one count of robbery. The charge of "being armed" upon the commission of the offense was dropped. At the time of defendant's trial Hollywood had not yet been sentenced. The jury was fully informed of these circumstances. In *People* v. *Lyons,* 50 Cal.2d 245, 265 [324 P.2d 556], the testimony of an accomplice was attacked because his sentence had been postponed until after he testified. The court held that this did not render his testimony incompetent but rather went to the witness' credibility. The same rule applies to an agreement to testify in return for a promise of immunity. (See *People* v. *Robinson,* 184 Cal.App.2d 69, 79 [7 Cal.Rptr. 202].)

The instant case is distinguishable from *People* v. *Green,* 102 Cal.App.2d 831 [228 P.2d 867], cited by defendant, wherein a promise of immunity was conditioned on the accomplice's testimony resulting in the *conviction* of defendant. The *Green* case, *supra,* at page 838, recognizes "the practice [involved in the instant case] which seems to be approved in all jurisdictions, if the ends of justice will be thereby served, to extend immunity to one jointly charged with crime, upon condition that he testify fully and fairly as to his knowledge of the facts out of which the charge arose."

There is no indication in the record that Hollywood did not testify freely and voluntarily, or that his penalty or future prosecution was dependent upon whether defendant

was or was not convicted. Under these circumstances the testimony of the accomplice was properly admitted. ▇ It was within the province of the jury, who were aware of these facts, to determine his credibility.

▇ Defendant also contends that he was deprived of a fair trial by the court's unreasonable restriction of cross-examination of two witnesses. The court refused to allow defendant to cross-examine defendant Hollywood about his relationship to one Dennis Silby, who Hollywood asserted was the third man who participated in the robbery. He was also denied the right to cross-examine Joan Russell as to the description she gave to the investigating officers which aided them in making a composite drawing of the robbers. The testimony of the witnesses on direct examination did not deal with these subjects. There was no error in excluding this information on cross-examination.

▇ The control of cross-examination is within the discretion of the court (*People* v. *Burton,* 55 Cal.2d 328, 343 [11 Cal.Rptr. 65, 359 P.2d 433]), and the court may and should limit it within reasonable bounds. (*People* v. *Lantz,* 120 Cal.App.2d 787, 791 [216 P.2d 19].)

There is no indication that there was an abuse of discretion or that defendant's rights were prejudiced by the limitations placed on cross-examination in the instant case.

Defendant asserts that the trial judge was guilty of misconduct with respect to certain comments made to defense counsel. A review of the transcript does not support that charge.

Defendant next contends that he was deprived of a fair trial because of certain comments made by the prosecutor. ▇ When counsel persisted in asking questions of witness Russell on the subject of the composite drawing to which the judge had previously sustained objections, the prosecutor said: "I think that counsel realizes it is incompetent, irrelevant and immaterial, and yet he continues to ask questions on that subject, although they seem to have done a very good job of identification." Although counsel assigned this remark as prejudicial misconduct he made no request that the jury be instructed to disregard it, and we therefore cannot consider the merits of this contention. "[T]he defendant may not predicate error in this court in the absence of assignment of such alleged misconduct as error and a request to the trial court to instruct the jury to disregard it." (*People* v. *Stembridge,* 99 Cal.App.2d 15, 23 [221 P.2d 212].)

Further, during direct examination of defendant, counsel asked if defendant "had been in prison for awhile." After defendant's affirmative response the prosecutor inquired: "Is counsel attempting to impeach his own witness?" Defendant neither objected to this alleged misconduct, nor requested that the jury be instructed to disregard it. He cannot now urge that the alleged error was prejudicial. (*People* v. *Hampton*, 47 Cal.2d 239, 240-241 [302 P.2d 300].)

■ It is next contended that the court erred in permitting the rebuttal testimony of officer Williams to show that the codefendant Goodall had made certain statements to the officer in reference to defendant's participation in the robbery. This testimony was proper since it was in direct rebuttal to Goodall's testimony on cross-examination by the district attorney. A proper foundation was laid for the introduction of the prior inconsistent statements by asking Goodall on cross-examination if he had made the statements.

■ Defendant complains the jury was not instructed that such testimony was to be received only for determining the credibility of the witness and not for the purpose of its truthfulness.[1] This has no merit since there is no indication that such an instruction was requested and refused. (*People* v. *White*, 50 Cal.2d 428, 430 [325 P.2d 985].)

Lastly, defendant claims the court erred in refusing to give certain requested instructions relating to circumstantial evidence.[2] ■■ "It is the general rule that a trial court is not required to instruct on the rules of law applicable to circumstantial evidence where the alleged circumstantial evidence is incidental to and corroborative of, direct evidence." (*People* v. *Malbrough*, 55 Cal.2d 249, 250-251 [359 P.2d 30].) In the instant case codefendant Hollywood testified that defendant was one of the three participants in the robbery as did victims Tempio, Jordinelli and Russell.

Thus, circumstantial evidence was merely incidental to and corroborative of the direct evidence, and under these circumstances the instructions were properly refused.

The judgment is affirmed.

Burke, P. J., and Balthis, J., concurred.

---

[1] CALJIC 54-A.
[2] CALJIC Nos. 26, 27, 28.