[Crim. No. 46. Fifth Dist. June 7, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. JOHN DIEGO GONZALES, Defendant and Appellant.

Richard L. Olson, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, Doris H. Maier, Assistant Attorney General, and John L. Giordano, Deputy Attorney General, for Plaintiff and Respondent.

BROWN (R.M.), J.—An information was filed charging the appellant with three counts of furnishing heroin without a prescription in violation of Health and Safety Code section 11501—Count One alleging the offense was committed on February 1, 1961; Count Two on April 6, 1961; and Count Three on April 12, 1961; together with three prior convictions for violations of section 11500 of the Health and Safety Code, which were admitted by appellant.

After a jury trial the appellant was found guilty of Counts One and Three, from which judgment he appeals, and was found not guilty of Count Two. Appellant did not testify or put on any case, claiming that the trial court committed prejudicial error by failing to allow the appellant to fully cross-examine the principal prosecution witness concerning his

44

narcotics use, and prejudicial error in the court's failing to allow the appellant to cross-examine the principal prosecution witness about his parole status and its effect on his motives for testifying.

The principal prosecution witness was Mr. Emit Thompson, a nonpaid informer for the Bureau of Narcotics Enforcement who had been a user of heroin and marijuana since 1949 and at the time of the trial was on parole for a 1953 conviction for selling heroin, for which he had been sentenced to prison.

*Count One.* From the office of the Narcotics Bureau, witness Thompson made a monitored phone call to defendant concerning the purchase of "two spoons" of heroin for $120. The meeting being arranged, the agents searched Thompson, his clothing and car, gave him $120 and placed upon his body a Fargo Set (a small transmitting radio device); then in two separate cars followed him. At the prearranged location the agents saw the defendant talking to Thompson and over the Fargo receiving set which was located in the agent's car, heard the defendant in reply to Thompson's question, "Where is it?" state, "Over there by the telephone pole." Agent Mannen, who had been observing this activity and listening to the radio transmission, testified that he observed the driver of the green pickup truck, that it was the defendant, and that this conversation took place near the telephone pole. Agent Yannello, with Mannen, was also listening on the radio set and heard the conversation and kept witness Thompson and the defendant in his sight during the entire time, identifying defendant by means of the headlights of the car which Mannen was driving. After the defendant left, the agents stopped their car and one went to the telephone pole, picked up an envelope and returned to the Narcotics Bureau office along with witness Thompson. The substance in the envelope was analyzed and found to contain heroin.

*Count Three.* As to this offense, Mr. Thompson was again searched at the Narcotics Bureau office, given $10 in marked money and a Fargo Set placed on his person, and pursuant to instructions and followed by two agents, contacted the defendant at a Fresno location and made arrangements for another purchase. Thompson met the defendant in his pickup truck; defendant drove away while Thompson, walking on another street, informed the agents by means of his radio that a deal had been made. The defendant then drove up in company with a Mr. Rubalcava. Thompson testified

that he went up to the pickup and defendant gave him some "papers" and drove off. The agents and Thompson returned to the bureau office and the "papers" containing heroin and $5.00 in change were delivered. Agent Moller testified that he had kept a visual contact of Thompson, that he saw the defendant standing on the sidewalk at Inyo Street, that the defendant had a pickup and drove off when Thompson by radio reported that he was going to make a deal, that the pickup in which there were two people, the defendant and Rubalcava, then came back and on its return the witness Thompson talked to somebody in the pickup and then Thompson went back to the bureau office, producing the narcotics and $5.00. However, Agent Moller was unable to testify as to what happened in the pickup other than to say that Thompson was talking to someone in the pickup and that defendant and Rubalcava were in the pickup.

■ Appellant urges that the trial court erred in sustaining objections to his questioning of witness Thompson as to his parole status and its effect on his motives. Such questions as "If you violate your parole you will be sent back to prison," "Do you know what the law is regarding a third conviction?" "How much time remained on the parole?" etc., are immaterial. Most of them call upon the witness to state conclusions or opinions. The witness did testify as to his previous convictions, that he had used narcotics, that he was on parole and that he had received or was expecting no promises or other benefits for his testimony or for acting as an informant.

■ While *People* v. *Ormes,* 88 Cal.App.2d 353 [198 P.2d 690], and *People* v. *Serpa,* 67 Cal.App.2d 327, 332 [154 P.2d 6], are authorities for the contention of appellant that wide latitude should be allowed in cross-examination for the purpose of testing a witness against a defendant in a criminal prosecution, the court further says in *People* v. *Serpa, supra,* at page 333, and quoted in *People* v. *Ormes, supra,* at page 359: ". . . , nevertheless the trial court has discretionary power over cross-examination which will not be disturbed on appeal unless it appears that there has been an abuse of such discretion; that thus the trial court may confine an examination within reasonable limits, or may curtail a cross-examination which is unduly protracted, frivolous, or which relates to matters which are irrelevant or have already been covered. . . ."

■ The examination relative to his parole status was

improper. See *People* v. *Hollander,* 194 Cal.App.2d 386 [14 Cal.Rptr. 917], where the court said at page 396: "It may be shown by the examination of a witness that he has been convicted of a felony, the number of felonies, and the names of them. [Citations.] In asking the questions the district attorney should not inquire into the details and circumstances of the offense. [Citations.] The objection to the question as to whether Gardner had served his entire time on the robbery conviction should have been sustained. The remainder of the examination with respect to Gardner's being on parole was improper."

See also *People* v. *Wynn,* 44 Cal.App.2d 723 [112 P.2d 979], at page 732: "This line of inquiry went far beyond that allowed by law, for a cross-examiner's questions must be limited to the fact of conviction and the nature of the crime; he may not go into the details or circumstances surrounding the crime [citations] ; and certainly the cross-examiner cannot delve into the question of the length of time served and conditions or circumstances surrounding the parole of a defendant. It would belie human experience and challenge common sense to say that such conduct was not prejudicial." See also *People* v. *Jones,* 204 Cal.App.2d 722, 727 [22 Cal.Rptr. 499].)

Appellant's attorney did question Thompson as to whether he had received any benefits from the State Narcotics office and Thompson testified that he had not received any money or benefits, promises of immunity or promises of any kind from the prosecution, and the record shows that there were no charges pending or contemplated against the witness. No effort was made by appellant to show any contrary testimony otherwise, or inducements, and there was no undue curtailment of appellant's right of cross-examination by the court's sustaining the objection where the matter had been exhaustively covered in prior questioning. (*People* v. *Smith,* 26 Cal.2d 854, 858 [161 P.2d 941].)

In the *Smith* case, *supra,* the court discusses "state of mind" and "no promises."

In *People* v. *Grayson,* 172 Cal.App.2d 372 [341 P.2d 820], the court set forth the proper method for showing motive to introduce such testimony of reward, and at pages 376-377 stated: "However, the proper method of showing such motive would have been to establish that the witness had been promised a reward, or that an inducement or threat held out or made to him in return for testimony favorable to the

prosecution motivated him to distort or falsify his testimony.''

The ruling of the trial judge sustaining objections to the types of questions quoted above did not exceed the bounds of sound discretion, nor did appellant suffer any prejudice by such rulings inasmuch as witness Thompson had admitted his arrest, conviction, possession and ''similar dealings'' with Ray Rubalcava who is a known user, seller and buyer.

### Restriction of Defense in Cross-Examination

The appellant further argues that he was limited in his cross-examination of the prosecution witness with respect to his motives, and in particular, concerning the testimony regarding Mr. Rubalcava, who was in the automobile of the appellant at the time the claimed purchase was made on April 12, 1961 (Count Three). Thompson had testified that he trusted Mr. Rubalcava, would not hesitate to pay money to him for the purchase of narcotics in his presence, and that he had engaged in similar activities over the years, but as to ''how many years'' and whether he had purchased narcotics from Rubalcava prior to the date of the third count, objections were sustained on the grounds that such questions were irrelevant and immaterial. Had the questions been asked as to the sale on April 12th, such questions with regard to the occurrence on April 12th would have been proper, but as far as prior actions are concerned relative to his parole status for the purposes of showing that witness Thompson was receiving benefits under his parole status, such a witness may not be cross-examined on matters which are irrelevant or outside the scope of direct examination for the purpose of testing the witness' credibility. (*People* v. *Grayson, supra,* 172 Cal. App.2d 372, 376; *People* v. *Serpa, supra,* 67 Cal.App.2d 327, 333.)

We have discussed the matter of the parole status above, stating that such cannot be inquired into.

The witness Thompson, on cross-examination, denied that he was then addicted, stating that he had broken the habit in 1959 or 1960, and the court sustained objections to the question, ''Will you show us your arms?''

It is well established that the scope of cross-examination is committed to the sound discretion of the trial judge, and in the absence of a clear abuse of such discretion, rulings in such matters will not be disturbed on appeal.

48

(*People* v. *Winston,* 46 Cal.2d 151, 158 [293 P.2d 40]; *People* v. *Apodaca,* 132 Cal.App.2d 340, 341 [282 P.2d 182]; *People* v. *Bryant,* 157 Cal.App.2d 528, 533 [321 P.2d 45]; *People* v. *Simpson,* 203 Cal.App.2d 368 [21 Cal.Rptr. 541].)

 It is obvious that the position of the appellant was to impeach the credibility of the witness under Code of Civil Procedure section 2051, hoping that he would give contradictory evidence by showing that there were needle marks on his arms which would indicate that the witness was still a narcotics user. Had the arms revealed marks, nevertheless, the appellant would have had to prove that these were needle marks of the type generally accepted as prima facie evidence of engaging in the use of narcotics.

In *People* v. *Bell,* 138 Cal.App.2d 7, 12 [291 P.2d 150], the court recognizes the conflict of authority as to what addiction would do as far as impeaching for untruthfulness, and that the witness could be impeached in this respect by virtue of being an addict, as compared in our case to the fact the witness denied that he was taking any narcotics.

In *People* v. *Lampkin,* 183 Cal.App.2d 102, 106 [6 Cal. Rptr. 596], there was no reversal for alleged error in refusing to permit the defendant to cross-examine the buyer as to whether or not she was "addicted to dope," and the court held that the defendant did not suffer any prejudice in view of the clear evidence of his guilt.

Appellant is not arguing apparently about the truthfulness of a witness who may be addicted, but in *People* v. *Buono,* 191 Cal.App.2d 203, 232 [12 Cal.Rptr. 604], the court said that, "Addiction per se presents a collateral issue and the matter of impeachment lies within the discretion of the trial court."

While in *People* v. *Jaurequi,* 142 Cal.App.2d 555, 561 [298 P.2d 896], the court took judicial notice that the use of narcotic drugs creates a tendency to lie, steal, etc., there is still a recognized conflict of authority on this subject, as set forth in *People* v. *Bell, supra,* 138 Cal.App.2d 7, and in Wigmore on Evidence (3d ed.), section 934.

In this case we do not think that the failure to show the arms is sufficient to be prejudicial error, though the court should have allowed the arms to be shown and given the defendant a wide latitude in his cross-examination (*People* v. *Watson,* 46 Cal.2d 818, 827 [299 P.2d 243]).

*People* v. *Watson, supra,* at page 836, sets forth the general rule in accordance with the application of section 4½,

article VI of the California Constitution to the particular situation, as follows: ". . . it appears that the test generally applicable may be stated as follows: That a 'miscarriage of justice' should be declared only when the court, 'after an examination of the entire cause, including the evidence,' is of the 'opinion' that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (2 Stanbury on California Trial and Appellate Practice, § 1043.)

Considering all the evidence, as to Count One it is more than sufficient; as to Count Three it is likewise sufficient inasmuch as the witness Thompson was properly searched, the results were obtained, he was under surveillance by the agents, and no point was made by the appellant that Agent Moller was unable to testify as to what took place in the pickup truck with defendant and Rubalcava.

The jury certainly had sufficient information to consider the credibility of Thompson by virtue of his admissions of his previous conviction, that he had been engaged in the narcotics traffic and that he had been an addict and was on parole. In our opinion the rejection of this evidence was not prejudicial and would not have changed the result.

The appellant has made no effort in his brief to specify any other errors about which he complains or to establish with a reasonable certainty that without the error of which he does complain the result would have been substantially different from that reached by the jury (*People* v. *Britton*, 6 Cal.2d 10, 13 [56 P.2d 491]).

### Failure of Defendant to Take the Stand

The failure of the appellant to testify and deny the incriminating circumstances weighed heavily against him. As the court said in *People* v. *Gillette*, 171 Cal.App.2d 497 [341 P.2d 398], at page 502:

"While the 'failure to testify will not supply a lacuna in the prosecution's proof' [citation], '[a] defendant's failure to take the stand "to deny or explain evidence presented against him, when it is in his power to do so, may be considered by the jury as tending to indicate the truth of such evidence, and as indicating that among the inferences that may reasonably be drawn therefrom, those unfavorable to the defendant are the more probable." (*People* v. *Adamson*, 27 Cal.2d 478, 489 [165 P.2d 3]'; [citations].) As pointed out in the *Adamson* case, *supra*, '[t]he failure of the accused

to testify becomes significant because of the presence of evidence that he might ''explain or . . . deny by his testimony'' (Cal. Const., art. I, § 13), for it may be inferred that if he had an explanation he would have given it. . . .' ''

The judgment is affirmed.

Conley, P. J., and Stone, J., concurred.