THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* JOSÉ RAMÓN DENIS RIVERA, Defendant and Appellant.

No. CR-68-104.        Decided March 2, 1970.

---

692

William Fred Santiago for appellant. Rafael A. Rivera Cruz, Solicitor General, J. F. Rodríguez Rivera, Deputy Solicitor General, and Juan José Ríos Martínez, Assistant Solicitor General, for The People.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

A jury found appellant guilty of an offense of violation of § 472 of the Penal Code[1] and he was sentenced to serve from

---

[1] Said section provides:

"Every married person who falsely and fraudulently represents him-

2 to 5 years in the penitentiary. The information charged that on or about August 1, 1967 and in San Juan, P.R., "unlawfully, wilfully, maliciously, and criminally and while being legally married to Petra Carrillo Denis, falsely and fraudulently represented himself as competent to sell a property (house), without the assent or concurrence of his wife Petra Carrillo Denis, this being an indispensable requirement to the validity of such sale since it was community property, and under such representation he wilfully conveyed the same selling it to Bienvenido López López for the amount of $5,000."

The evidence for the prosecution consisted of the testimonies of Bienvenido López, purchaser of the property, Attorney Francisco Rádinson Pérez, notary before whom the deed of sale was executed, Petra Carrillo, defendant's wife, and Valois Cruz Riquerme, officer of the State Insurance Fund, who delivered the money in a check, as sale price, to the purchaser so that the latter in turn would deliver it to the defendant who was the vendor. Documentary evidence was also presented, including a sworn statement made by the defendant admitting the commission of the offense.

The defense merely presented a copy of a deed of sale of a house located in a lot property of the Heirs of Merhoff executed in 1960 before Notary Vicente Hita, Jr.

In synthesis, the evidence for the prosecution, not controverted, sought to establish that as of the date of the trial the defendant, José Ramón Denis Rivera, had married Petra Carrillo in New York City some 11 years before. In 1960 the defendant came to Puerto Rico and with money belonging to both of them purchased a house without lot located on Merhoff Street of Villa Palmeras in Santurce so that his mother

---

self or herself as competent to sell or mortgage any real estate, to the validity of which sale or mortgage the assent or concurrence of his wife or her husband is necessary, and under such representations willfully conveys or mortgages the same, is guilty of felony." (33 L.P.R.A. § 1818.)

would live in it.[2] Subsequently the couple moved to Puerto Rico. In 1965 the defendant, while being married to Petra Carrillo, purchased from María Alberta Merhoff the lot where the house he purchased in 1960 was located.[3]

José Angel Romero, friend of attorney Rádinson, introduced the latter to defendant José Ramón Denis Rivera who was interested in selling the property located in Merhoff Street in Villa Palmeras. Upon being questioned by the attorney the defendant informed him that he was married to Petra Carrillo. Romero took the necessary papers to Notary Rádinson to prepare the deed of sale which would be signed by the parties at the offices of the State Insurance Fund since the purchaser Bienvenido López would pay the price of the sale with a check which would be issued by the Fund as compensation for a labor accident. After the deed was drafted, Notary Rádinson, the purchaser López, the defendant, and a lady the latter introduced as his wife Petra Carrillo went to the Fund's offices. Said lady signed the deed as Petra Carrillo but afterwards it was found that she was not defendant's wife but a person called María Juana or Juana María Quiñones Suárez. When the deed was signed[4] an officer of the Fund delivered a check for $6,000 to the purchaser and the latter endorsed it to the vendor, defendant herein.

Weeks later attorney Rádinson made a telephone call to defendant and informed him that he had deceived him because the lady who signed the deed was not his wife Petra Carrillo. It was thus admitted by the defendant and he agreed to sign

---

[2] The sale was performed through public deed No. 196 executed before Notary Vicente Hita, Jr., on April 27, 1960. A copy of said deed was the only evidence presented by the counsel for the defense.

[3] Thus it appears in deed No. 31 of June 24, 1965, executed before Notary Rafael Baragaño Diez.

[4] This is deed of sale No. 76 executed before Notary Francisco Rádinson Pérez in San Juan, P.R., on August 1, 1967, by José Ramón Denis Rivera, defendant and his wife Petra Carrillo in favor of Bienvenido López López.

and did sign a sworn statement making this fact clear. Said sworn statement, attested to by Notary Ignacio Santos Sierra, was presented and admitted in evidence.

Defendant's true wife, Petra Carrillo, did not appear to sign nor did she sign the said deed of sale, or authorize the sale of the property located in Merhoff Street of Villa Palmeras.

Appellant assigns the commission of the following five errors:

## FIRST ERROR

"The trial court erred seriously, as a matter of law, in admitting the testimony of attorney Francisco Rádinson Pérez, notwithstanding appellant's objection, because the latter considered that the Notary acted in functions of legal adviser in the sale transaction."

## SECOND ERROR

"The trial court erred seriously in admitting in evidence appellant's sworn statement (confession), prepared by attorney Francisco Rádinson Pérez and in allowing that said confession be delivered to the Jury and that the latter be permitted to take it to the deliberation room, while it passed on the guilt or innocence of defendant-appellant."

## THIRD ERROR

"The trial court erred seriously in allowing the testimony of appellant's wife, notwithstanding his objection."

## FOURTH ERROR

"The trial court erred in deciding that the property sold was a property belonging to the conjugal partnership, composed of appellant and the witness for the prosecution Petra Carrillo."

## FIFTH ERROR

"The trial judge erred in concluding that as a matter of fact the sold property was community property and in transmitting instructions on the basis of said conclusion."

The first error was not committed. Defendant's objection that attorney Francisco Rádinson Pérez testified without his consent finds no support at law, in the record or in the case law of this Court. The testimony given in court by attorney Rádinson reveals that he merely drafted the deed of sale, took the signatures of the parties thereto, and attested to said deed as notary. He made the legal warnings in the presence of the parties and an officer of the State Insurance Fund. There were no communications between the said attorney and the defendant which might be regarded as privileged pursuant to the provisions of the Law of Evidence.[5] He limited himself to act as a mere instrument in order to put down in writing in a public deed what the parties said they had agreed upon. Therefore, in contemplation of law, he did not act in his capacity as an attorney. *Calderón v. Cacho*, 62 P.R.R. 593 (1943).

Attorney Rádinson acted exclusively within his function of attesting publicly to a document. The defendant could not invoke the question of privileged communications to preclude the admission in evidence of the testimony of said attorney. *Lugo v. Ferrer*, 85 P.R.R. 832, 840, and 841 (1962).

The second error assigned was not committed by the trial court in admitting in evidence the defendant's sworn state-

---

[5] Section 402(2) of the Code of Civil Procedure provides:

"A person cannot be examined as a witness in the following cases:

"1.      .    .    .    .    .    .    .    .      ..

"2. An attorney cannot, without the consent of his client, be examined as to any communication made by the client to him, or his advice given thereon in the course of professional employment; nor can an attorney's secretary, stenographer, or clerk be examined, without the consent of his employer, concerning any fact the knowledge of which has been acquired in such capacity; but this paragraph shall not be applied to an action between the lawyer and his client, where the existence, amount, validity and circumstances of an agreement about the payment of fees are at issue; but no communication is privileged under this subdivision when the same was made with the intention that it should be communicated to any person having an interest adverse to the client, or when the same was made in furtherance of a crime or fraud then being perpetrated or in contemplation." (32 L.P.R.A. § 1734.)

ment, nor was the fact that the jury was allowed to take said statement with them to the deliberation room a prejudicial error in this case which would give grounds for the reversal of the judgment.

We are already acquainted with the circumstances under which the defendant made the sworn statement before notary Ignacio Santos Rivera. He made it voluntarily at the request of attorney Rádinson. Said statement is so incriminatory that it is practically tantamount to a confession.[6]

---

[6] Insofar as pertinent said statement reads:

"That I was the owner, together with my wife Petra Carrillo, of a house with lot No. 101 of Block H located in Ward Merhoff in the Suburb of Santurce of the city of San Juan, Puerto Rico, which appears recorded at folio 163 of vol. 500 of Santurce Norte, property No. 18,276.

"That in or about the middle of July of the present year, I informed attorney Francisco Rádinson Pérez my desire to sell, together with my wife Petra Carrillo, the aforesaid property to Bienvenido López López for the price of $6,000.

"That I communicated said fact to attorney Francisco Rádinson Pérez one day when he went to my business looking for an automobile part for his car.

"That I also informed attorney Francisco Rádinson Pérez, upon delivering to him the title deed of the house to be sold, that since the money Bienvenido López López had to purchase the house was a check of the State Insurance Fund, the deed should be signed at one of the Fund's offices.

"That on August 1, 1967, at the State Insurance Fund, place which was previously agreed upon for the signing of the deed, I introduced to attorney Francisco Rádinson Pérez, as my wife Petra Carrillo, a third person who was not my legitimate wife Petra Carrillo.

"That before and after signing the deed of sale of the· aforesaid house, the third person, who appeared there as Petra Carrillo, and myself conducted and behaved as legitimate spouses.

"That when attorney Francisco Rádinson Pérez called my wife Petra Carrillo to sign the deed in the presence of Valois, officer of the State Insurance Fund, that third person answered, and signed the deed voluntarily and composedly, putting down the initials P.C. on each and every one of the folios of the document and her signature as Petra Carrillo at the end of the document.

"That neither before nor after did I inform attorney Francisco Rádinson Pérez that said third person, who appeared there as my legitimate wife Petra Carrillo, was not so.

"That that third person, upon being called by attorney Francisco Rádinson Pérez as Petra Carrillo, answered freely and voluntarily.

■ Said sworn statement was not made by defendant while he was deprived of his liberty, under arrest or in any manner whatsoever under custody of the police nor was he questioned in order to obtain incriminatory statements to prosecute him for the commission of an offense. Therefore, it was admissible in evidence. *People* v. *Rosado Cancel*, 95 P.R.R. 546 (1967) ; *People* v. *Alfonso Oyola Sierra*, judgment of October 14, 1968; *People* v. *Beltrán Santiago*, 97 P.R.R. 89 (1969).

On prior occasions we have stated that, ordinarily, to allow the jury to take with them a defendant's written confession to the deliberation room constitutes an error which entails the reversal of the judgment and the granting of a new trial. *People* v. *Ramos*, 84 P.R.R. 542 (1962) ; *People* v. *Cruz*, 87 P.R.R. 124 (1963) ; *People* v. *Vega Román*, 92 P.R.R. 658 (1965). In the first two cases we refused to reverse the judgments because we considered that the error committed was not prejudicial to the defendant. For the commission of the same error, we reversed the judgment in the case of *People* v. *Lebrón*, judgment of October 18, 1968, because we considered that in said case the error was prejudicial. The only evidence connecting the defendant with the commission of the offense consisted in the testimony of two accomplices and in the defendant's extrajudicial confession and this confession was precisely the only evidence of corrob-

---

"That at no time, before or after the signing of the aforesaid deed, did the third person I introduced to attorney Francisco Rádinson Pérez as Petra Carrillo inform him that she was not Petra Carrillo.

"That both the third person and I, before and after the signing of the aforesaid document, behaved as legitimate spouses and so we communicated to attorney Francisco Rádinson Pérez and made him believe so.

"That I issued a check to attorney Francisco Rádinson Pérez in the amount of $65 as payment of his fees and for deed No. 76 executed on August 1, 1967, whereby I sold the aforesaid house to Bienvenido López López.

"That for about two years and nine months I have been separated from my wife Petra Carrillo and I am firmly determined to divorce her." (Sworn Statement, pp. 1 to 3.)

oration. In *People* v. *Vega Román, supra,* besides committing the error we discussed, another one more serious and prejudicial to the defendant was committed consisting in that something alien to the proceeding was improperly introduced, to wit, that defendant had committed thefts previously. We also reversed the judgment and ordered the holding of a new trial.

In the case of *People* v. *Cruz, supra,* upon refusing to reverse the judgment we said that the "confessing defendants did not introduce defense evidence and the prosecution evidence on the facts was very simple and brief and did not involve problems of conflict."

In the case at bar the evidence was not extensive or complex either. The defense presented no evidence in order to controvert the evidence for the prosecution.

■ Besides defendant's written confession admitted in evidence, the jury had before them additional evidence as to the fundamental fact comprised in the sworn statement to the effect that defendant introduced as his wife Petra Carrillo another person who was not her and that that person signed the deed with the name of Petra Carrillo. It was thus testified by witness Bienvenido López, attorney Rádinson, Petra Carrillo, and Valois Cruz Riquerme. These witnesses were not contradicted. Therefore, the error committed did not injure defendant's substantial rights.

There is no merit in appellant's contention that, as assigned in the fourth error, the trial court erred in deciding that the property sold constituted community property.

■ Real property is subject to the laws of the country in which it is situated. Section 10 of the Civil Code (31 L.P.R.A. § 10). A long time ago we held that the conveyance of real property situated in Puerto Rico is subject to our laws. *Colón et al.* v. *Reg. of Aguadilla,* 22 P.R.R. 344 (1915). Though appellant and Petra Carrillo contracted marriage in

New York City, where there exists no conjugal partnership, as to the real property acquired subsequent to the marriage, the real law governs. Appellant presented no evidence in order to establish that the origin of the money with which he acquired the property while being married to Petra Carrillo was of a separate nature, in which case the nature of that money would have been transmitted to the property acquired. *Babilonia* v. *Registrar*, 62 P.R.R. 661 (1943). All the property of the marriage shall be considered as community property until it is proven that it belongs exclusively to the husband or to the wife. Section 1307 of the Civil Code (31 L.P.R.A. § 3647); *De Arrastia* v. *Quiles*, 65 P.R.R. 857 (1946).

In this case the above-mentioned presumption was strengthened by the testimony of Petra Carrillo who deposed that the money invested in the purchase of the property belonged to both of them. In any event, the burden of proof to overcome the presumptive community character is incumbent on the party asserting the separate character of the property. *Ex parte Espéndez*, 85 P.R.R. 419 (1962). In the deed of sale appellant did not set forth the origin of the money with which the property was acquired the presumption being that it was community property. *Bacó* v. *Registrar*, 63 P.R.R. 669 (1944). At the trial, as we had said before, appellant did not try to overcome the presumption either. According to our laws, the real property sold by appellant belonged to him and to his wife Petra Carrillo for it was community property. He could not sell said property without the consent of his wife Petra Carrillo. Section 1313 of the Civil Code (31 L.P.R.A. § 3672). If appellant falsely and fraudulently represented himself as competent to sell the community real property, making another woman appear as his wife, without the latter's assent or concurrence, he committed violation of § 472 of the Penal Code.

■ Although there is no basis in the evidence to allow the jury to decide whether the property sold by appellant was community or his separate property, the judge instructed ". . . in first place you must determine whether this property, this house located at 265 Merhoff Street of Villa Palmeras was, as of August 1, 1967, community property, that is, a property belonging to the conjugal partnership." The judge ended with the following instruction: ". . . You are going to determine whether all those facts have been established to your satisfaction, that is, that while this defendant was married to Petra Carrillo, legally married, he sold on that day to which the information refers, and through public deed executed before notary Francisco Rádinson, a house, property of the conjugal partnership located at 265 Merhoff Street in Villa Palmeras, and that he represented himself as having the consent and authorization of Petra Carrillo, his wife, making another woman appear as Petra Carrillo and making her sign as if she were his legitimate wife, . . . ."

The fifth error was not committed.

Finally we shall consider the third error which concerns the admission in evidence of the testimony of Petra Carrillo, defendant's wife.

Section 402 of the Code of Civil Procedure (32 L.P.R.A. § 1734 (1) )[7] provides that a husband cannot be examined for or against his wife without her consent; nor a wife for or against her husband without his consent.

As an exception as far as penal actions are concerned, said section provides that the prohibition does not apply to

---

[7] In its subsection 1, said section provides:

"1. A husband cannot be examined for or against his wife without her consent; nor a wife for or against her husband without his consent; nor can either, during the marriage or afterwards, be without the consent of the other, examined as to any communication made by one to the other during the marriage; but this provision does not apply to a civil action or proceeding by one against the other, nor to a criminal action or proceeding for a crime committed by one against the other." (32 L.P.R.A. § 1734.)

a criminal action or proceeding for a crime committed by one against the other.[8]

Appellant alleges that the exception is not applicable to his case because the offense charged against him was not committed against his wife.

In the case of *People* v. *Matos*, 83 P.R.R. 323 (1961), we made a rather embracing study of the cited § 402 of the Code of Civil Procedure. In said case a woman testified against her husband. Defendant had perpetrated a crime of statutory rape against a minor 14 years old and afterwards contracted marriage with her although they never lived together, to prevent her from testifying in the trial for rape. We decided that under such circumstances the exception to the prohibition was applicable and therefore the testimony of defendant's wife was admissible in evidence.

■ In that case we pointed out, upon tracing the origin and development of the doctrine which prohibits the woman to testify against her husband and the latter against his wife, that the reason most frequently advanced in support of the rule is that it is intended to preserve the marriage.

■ Important reasons move us to decide that in this case the admission in evidence of the testimony of defendant-appellant's wife does not warrant the reversal of the judgment appealed from. Although it might be argued that technically the offense committed by the defendant is an offense committed against the state and not against his wife, the unquestionable reality is that the fraud committed by said defendant was directed to injure her rights, the latter being the actual victim of the offense.[9]

---

[8] The exception is applicable in criminal actions both for felonies and for misdemeanors. *People* v. *Correa*, 34 P.R.R. 843 (1926).

[9] See Wharton, Criminal Evidence, § 829 (12th ed.); *United States* v. *Mitchell*, 137 F.2d 1006 (2d Cir.), *cert. denied*, 321 U.S. 794, 88 L.Ed. 1083; *reh. denied*, 322 U.S. 768, 88 L.Ed. 1594; *People* v. *Lantz*, 120 Cal.

On the other hand, the purpose of the rule which establishes the prohibition stops having real contents here because the preservation of the marriage between defendant and his wife is illusory in view of the fact that (1) as of the date of the trial they had been separated for more than two years, (2) defendant lived in concubinage with another woman, and (3) defendant himself stated in a sworn statement his firm intention to get a divorce.

Lastly we must point out that assuming that the error had been committed, the same was not prejudicial to defendant. The testimony of his wife was rather of a corroborative character. The essential facts constituting the offense were proved with other evidence not controverted. The community nature of the property sold by defendant, the fraud committed by the latter in introducing another woman as his wife making said woman to sign the deed of sale as if in fact she were his spouse, and even the lack of consent and approval of the transaction by his wife, was supported by other evidence. As to this last ingredient of the offense charged against appellant, attorney Rádinson testified that upon telling defendant to try to get the money for his wife so that the matter would not go to the district attorney's office, he answered that: ". . . the one who was going to get into trouble was his wife. . . ." He also told him that attorney Rádinson was a victim and that he (defendant) had deceived him "just to annoy his wife. . . ." The evidence for the prosecution as a whole, including defendant's confession and excluding his wife's testimony, establishes perfectly the lack of consent or authorization of Petra Carrillo for the sale performed by her husband. So that it is not probable that the testimony of defendant's wife had any influence of importance in the decision of the jury.

App.2d 787; *Jordan v. State*, 142 Ind. 422, 41 N.E. 817; *United States v. Ryno*, 130 F.Supp. 685; *Gilles v. Del Guercio*, 150 F.Supp. 864, 97 L.Ed. 613.

For the reasons stated the judgment appealed from will be affirmed.

Mr. Chief Justice did not participate herein. Mr. Justice Dávila delivered a dissenting opinion in which Mr. Justice Hernández Matos and Mr. Justice Santana Becerra concur.

—O—

MR. JUSTICE DÁVILA, dissenting.

San Juan, Puerto Rico, March 2, 1970

I dissent because in *People* v. *Cruz*, 87 P.R.R. 124 (1963) we stated without contradiction that "It ought to be understood, we repeat, after the decision of *Ramos* [*People* v. *Ramos*, 84 P.R.R. 542 (1962)] that trial judges should not commit the error [of permitting the written confession to go with the jury to the deliberation room] in the belief that the same might not be prejudicial to defendant. The prohibition of § 274 [there is a similar provision in force in Rule 140 of the Rules of Criminal Procedure of 1963] is clear and should be adhered to by the trial courts."

In the case at bar the trial was held on January 12, 1968, five years after our expression in *Cruz*, and six after *Ramos* where we said that "In the future, we shall apply the rule thus."

The opinion of the Court stresses that in *Ramos* and *Cruz* we refused to reverse the judgment. But in *Ramos* there were extraordinary circumstances. Besides being the first case in which the question was raised the attendant circumstances warranted making an exception. We expressed ourselves thus:

". . . It should be the practice of our courts not to permit the written confession of defendant to go to the jury, after it has been read to the gentlemen of the jury when introduced in evidence by the district attorney. Such is the express provision of the code in force and as we pointed out in footnote 3, a similar

provision appears in the new Rules of Criminal Procedure proposed by this Court. Since 1904 in *People* v. *Reyes, supra,* we stated at p. 200 'but in no case should the testimony or depositions of witnesses, as they are so denominated in the jury law previously cited, be delivered to them.' (It refers to § 274 of the Code of Criminal Procedure.)

"Now, the facts of this case having been considered, was it prejudicial to defendant to allow the confession to go to the jury? Irrespective of the fact that the trial judge should have made effective the provision invoked by defendant, his failure to do so did not have a prejudicial effect on appellant, under the very special circumstances surrounding this case. We understand that it did not prejudice him, for although it is true that the jury had before them the written confession yet they also had a vivid recollection of the testimony of the different persons to whom defendant admitted the commission of the deeds. And defendant himself upon testifying affirms that this was so; that he communicated what had happened to several persons. Thus in this case, the written confession could hardly remind the jury more than the various testimonies introduced at the trial of persons to whom defendant confessed the facts, and add to this that in the written confession defendant states that the victim attacked him with a knife, an incident which is beneficial to defendant, since it inserted the element of a struggle and self-defense. So that the fact that the jury had before them the written confession which actually corroborated in part his testimony before the jury in his defense, far from being prejudicial to him, it might have conceivably benefited him. In view of these circumstances we shall not reverse the judgment appealed from though ordinarily, to allow the written confession to go to the jury, in violation of the provisions of § 274, would entail the reversal of the judgment and the granting of a new trial. In the future, we shall apply the rule thus."

In *Cruz* the trial was held before our opinion in *Ramos,* and we have already seen what we stated in this case concerning the way we would apply the provision in the future. In fact we were giving prospective effect to our decision, that is, that we would apply rigidly the prohibition that the confes-

sion go to the jury, to the trials to be held after the date on which we delivered the decision of *Cruz*, January 25, 1963.

Thus, in *People* v. *Santos*, 87 P.R.R. 593 (1963), although the trial was held before *Ramos* and *Cruz*, however, we reversed the judgment on account of the cumulative effect of three errors committed by the trial court. In *People* v. *Couret Martínez*, 89 P.R.R. 56 (1963), we pointed out that the trial had been held before we rendered our opinion in *Ramos*. In *People* v. *Hernández Rodríguez*, 89 P.R.R. 754 (1964), the trial was held in June 1960; in *People* v. *Martínez Rivera*, 90 P.R.R. 158 (1964), the trial was held in April 1960, and we stated so upon deciding the question; in *People* v. *Castro Cruz*, 90 P.R.R. 201 (1964), we also stated that the trial was held before *Ramos* and that the question involved was a sworn statement presented by the defense itself in order to impeach a witness for the prosecution; in *People* v. *Martínez Díaz*, 90 P.R.R. 456 (1964), the trial was held before *Cruz;* in *People* v. *Vega Román*, 92 P.R.R. 658 (1965), the trial was held subsequent to *Cruz* and we reversed the judgment; in *People* v. *Cortés Muñiz*, 93 P.R.R. 761 (1966), the trial was held before *Cruz;* in *People* v. *Colón Rivera*, 93 P.R.R. 831 (1967), only case we have affirmed, the trial having been held after *Cruz*, during April and May 1964, we made it clear that it did not strictly involve a confession. A letter written by the defendant was involved.

With so clear expressions as those of *Ramos* and *Cruz* we do not see what justification might be alleged for the same not to be fulfilled by the trial judges. In *Cruz* we clearly stated that the trial judges should not commit the error of permitting the written confession to go to the jury in the belief that the same might not be prejudicial to defendant. Certainly the one first called upon to give effectiveness to its pronouncements is the Supreme Court itself.